PEOPLE v HIDER

Docket No. 63192. Submitted February 9, 1984, at Grand Rapids.—
     Decided June 5, 1984.

Hurley Hider was convicted of breaking and entering an occupied
     dwelling with intent to commit larceny, Kalamazoo Circuit
     Court, Charles H. Mullen, J. Defendant was charged with
     breaking and entering the home of a woman who had died the
     day before the offense. Defendant appeals, alleging that he was
     improperly identified in a photographic line-up while he was in
     custody and that there was insufficient evidence that the house
     was occupied at the time of the offense and that, therefore, only
     the charge of breaking and entering an unoccupied dwelling
     should have been submitted to the jury. *Held:*

     1. While a photographic line-up should not generally be used
     where a defendant is in custody, the evidence in this case
     shows that the prosecution was unable to conduct a corporeal
     line-up because of an insufficient number of available people
     with defendant's physical characteristics. Under the circum-
     stances, the photographic line-up was permissible.

     2. The intent of an occupant to return to a dwelling following
     an absence controls the decision of whether the dwelling is
     "occupied" or "unoccupied". In this case, the owner-occupant
     was deceased and there was no evidence that anyone shared
     her home and intended to remain in it or to return to it after a
     temporary absence. The house was, therefore, an unoccupied
     dwelling, and defendant's conviction was improper.

     Vacated, and remanded for entry of a conviction of breaking
     and entering an unoccupied dwelling house and for resentenc-
     ing.

REFERENCES FOR POINTS IN HEADNOTES
[1] 21A Am Jur 2d, Criminal Law § 952.
     29 Am Jur 2d, Evidence § 371.8.
     Admissibility of evidence of photographic identification as affected
     by allegedly suggestive identification procedures. 39 ALR3d 1000.
[2] 13 Am Jur 2d, Burglary §§ 1, 8 *et seq.,* 27 *et seq.*
     Occupant's absence from residential structure as affecting nature of
     offense as burglary or breaking and entering. 20 ALR4th 349.

1. CRIMINAL LAW — IDENTIFICATION — PHOTOGRAPHIC IDENTIFICATION.
   Generally, photographic arrays should not be used for identification of a criminal defendant where the accused is in custody; however, a photographic line-up is permissible where it is not possible to arrange a proper corporeal line-up or where there is an insufficient number of people available with the defendant's physical characteristics.

2. CRIMINAL LAW — BREAKING AND ENTERING — OCCUPIED DWELLING.
   A residence need not in fact be occupied for the offense of breaking and entering an occupied dwelling to occur; any dwelling house habitually used as a place of abode, whether or not an occupant is physically present at the time of the offense, is an occupied dwelling within the meaning of the breaking and entering statute; it is the intent of the occupant to return following an absence which controls (MCL 750.110; MSA 28.305).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *James J. Gregart,* Prosecuting Attorney, and *Patricia N. Conlon,* Assistant Prosecuting Attorney, for the people.

*Milton J. Marovich,* for defendant on appeal.

Before: M. J. KELLY, P.J., and R. M. MAHER and M. P. REILLY,* JJ.

PER CURIAM. Defendant appeals as of right from a jury conviction of breaking and entering an occupied dwelling with intent to commit larceny, MCL 750.110; MSA 28.305. He was sentenced to serve 8 to 15 years imprisonment.

Defendant was charged with breaking and entering the home of Aletha Clark, in Kalamazoo County, on July 20, 1981. On July 19, 1981, Mrs. Clark, the sole occupant of the house, died in a hospital. After her death, friends and relatives visited the house to straighten up, remove food

* Circuit judge, sitting on the Court of Appeals by assignment.

from the refrigerator, secure the house, and feed Mrs. Clark's dog, but no one stayed in the house for any length of time. At approximately 7:30 p.m. on July 20, 1981, a neighbor, Eric Erickson, went to the Clark home to check on the house. He encountered an older model brown Chevrolet parked in the driveway and met its driver as he came from behind the house. The man was black and at least six feet tall. Erickson spoke to the man for several minutes and then the man drove away. After the man left, Erickson noticed Mrs. Clark's television set in the backyard and quickly chased after the car. He got the license plate numer. Defendant was picked up five hours later in the car, and a subsequent search of the car found evidence which tied him to the crime. The Clark home was checked and found to be in disarray despite having been locked up securely earlier in the day by relatives of Mrs. Clark. On July 22, 1982, Erickson was shown a photographic array and identified defendant as the burglar. At the time the photographic identification was made, defendant was in custody and available for a corporeal line-up.

Defendant first argues that his conviction must be reversed because a photographic, rather than corporeal, line-up was shown to Erickson and because the trial court compounded this error by permitting Erickson to make an in-court identification of defendant without first finding an independent basis for that identification. While the question is a close one, we disagree that the use of a photographic line-up in this case was improper.

Generally, photographic arrays should not be used for identification where the accused is in custody. *People v Anderson,* 389 Mich 155, 186-187; 205 NW2d 461 (1973). However, where it is

not possible to arrange a proper line-up or where there is an insufficient number of people available with defendant's physical characteristics, a photographic line-up is permissible. *Anderson, supra,* pp 186-187, fn 22. Here, the prosecutor argued that the photographic line-up was necessary because defendant was of a rare physical type in Kalamazoo County—over 50 years old, black, at least 6 feet tall, and approximately 200 pounds in weight. The prosecutor presented evidence that the Kalamazoo police *wanted* to conduct a corporeal line-up and requested the personnel at the county jail to find likely candidates to stand with defendant. After a two-hour search, the jail representative called the officer in charge of defendant's case and told him that they had been unable to locate enough "specimens" for a line-up because of defendant's somewhat unusual appearance. The officer therefore arranged the photographic array and had defendant's attorney present when the array was presented to Erickson. The attorney removed all "Department of Corrections" indicia from the photographs and arranged them so that height markers in the photographs were masked.

While this evidence does not include direct evidence of the number of tall black men over 50 years in age available for a line-up, we find that the prosecution sufficiently proved that there was an insufficient number. There was no evidence that the police sought to avoid a corporeal line-up —to the contrary, the police attempted to arrange one, but were thwarted by members within their own organization (the jail staff). Thus, this was not a situation in which *defendant's* wish to have such a line-up was thwarted or in which the police ignored standard procedures which might have located available men. *People v Ealey,* 102 Mich

App 301; 301 NW2d 514 (1980). Although it would have been preferable for the police to have involved defense counsel in the choice of line-ups, *People v Powell*, 97 Mich App 287; 294 NW2d 262 (1980), we do not find that the failure to do so invalidated the photographic identification.

Defendant next contends that the trial court erred by denying his motion for a directed verdict on the charge of breaking and entering an occupied dwelling house. He argues that, under the facts of this case, there was insufficient evidence that the house was "occupied" at the time of the breaking and entering and that the trial court should have submitted only the 10-year felony charge of breaking and entering an unoccupied dwelling house to the jury instead of submitting both charges and permitting the jury to choose between them.

MCL 750.110; MSA 28.305 defines an "occupied dwelling house" as a building which is "habitually used as a place of abode". This Court has in turn interpreted "habitual place of abode" as follows:

"Under Michigan law, a residence need not in fact be occupied when the offense takes place in order for the offense to constitute a breaking and entering of an occupied dwelling. *People v Guerrero*, 57 Mich App 316, 319; 225 NW2d 746 (1975). Any dwelling house habitually used as a place of abode, whether or not an occupant is physically present at the time of the breaking and entering, is an occupied dwelling within the meaning of the statute under which defendant was convicted. When an inhabitant intends to remain in a dwelling as his residence, and has left it for a temporary purpose, such absence does not change the dwelling into an unoccupied one in the eyes of the law. The intent to return following an absence controls; the duration of the absence is not material. Nor is the

structure's habitability germane." *People v Traylor,* 100 Mich App 248, 252; 298 NW2d 719 (1980).

The question before us is whether a house, left vacant by the death of its sole owner and occupant, may be considered an occupied dwelling house within these parameters.

This issue has not been addressed before by Michigan courts. However, courts in two other states have addressed the issue tangentially and concluded *sub silentio* that a house left unoccupied by its occupant's death is not an "occupied" dwelling. In *Keel v State,* 165 Ind App 579; 333 NE2d 328 (1975), the defendant was convicted of burglarizing the home of Lula Roberson who had recently died. The defendant had chosen the house after scanning the obituary notices in the newspaper and concluding that, if he were caught, he could only be charged with second-degree burglary (burglary of a building other than a place of human habitation). However, unknown to the defendant, Ms. Roberson's fiance had come to stay with her shortly before her death and had remained in the home for a week after her death. The Indiana Court of Appeals concluded that, *because the fiance was legally living in the house at the time of the burglary,* the defendant could properly be convicted of burglarizing a "place of human habitation at the time of the burglary". 165 Ind App 583. In *Johnson v State,* 188 So 2d 61 (Fla App, 1966), the defendant was convicted of breaking and entering a dwelling house. In that case, the evidence established that the house had been owned by a husband and wife but that, at the time of the crime, the husband was deceased and the wife was confined in a mental hospital. Custody of the home had been placed in a real estate salesperson who had an exclusive listing for the sale of the prop-

erty and was in actual possession, but who did not live in the house. The Florida Court of Appeal concluded that the state had not proven that the house was a "dwelling house" at the time of the crime:

"It was incumbent upon the State to prove each element of the crime. Thus, when the proof is that a building, which is alleged to be a dwelling house, was not occupied at the time of the breaking, the State has the burden of proving that the occupant's absence was temporary. To hold otherwise would shift the burden of proof to the defendant and require her to prove the absence of an intent to return." 188 So 2d 63-64.

The court noted that the prosecution had not introduced any evidence that the mentally ill wife intended to return to the house.

We conclude that, on these facts, Mrs. Clark's house was not an "occupied dwelling house" at the time of the crime. Mrs. Clark's absence can hardly be considered temporary and there was no evidence that anyone had shared her home and intended to either remain in it or to return to it after a temporary absence. We therefore vacate defendant's conviction for breaking and entering an occupied dwelling house and remand to the trial court for entry of a conviction of breaking and entering an unoccupied dwelling house. Defendant is entitled to be resentenced on the new conviction.