OPINION OF THE COURT
 

 Titone, J.
 

 Today we determine whether a “dwelling” has been burglar
 
 *746
 
 ized if a person wrongfully enters the first floor offices of a school, where a fifth floor school office contains a bed that is used for an occasional overnight stay. We hold that such a building is not a dwelling within the definition of second degree burglary and reduce appellant’s conviction to third degree burglary, the burglary of a building that is not a dwelling.
 

 The building at issue, the Convent School of the Religious of the Sacred Heart in Manhattan, has seven floors, two below grade and five above. The basement contains employee lockers; the first floor, administrative offices; the second, a chapel, and the third and fourth floors, classrooms. On the fifth floor are a conference room, an art room and a kitchen, but primarily offices for faculty use when school is in session. One of the offices has a bed, and another has a chair which can be used for sleeping. The school’s Administrator testified that the bed in the office was “rarely” used for overnight guests, estimating between 20 or 30 occasions per year, when someone was working late or when needed by a visiting priest. No one was staying overnight on the fifth floor on the night in question. Employed as a member of the cleaning and weekend reception staff, defendant had keys to the school, and was free to come and go at any time whether for work or to obtain personal items from his locker in the basement. His keys, however, did not permit access to the two first floor offices. On June 6, 1993, defendant and his brother, who was separately convicted, broke into the first floor offices and took various items.
 

 The Appellate Division determined that the fifth floor office with a bed in it was enough to make the building a dwelling within the second degree burglary statute (241 AD2d 315). The fifth floor “ ‘guest’ quarters” were “structurally adapted for overnight accommodation” and “could have been so occupied on the night of the burglary” such that the school could be considered a dwelling
 
 (id.,
 
 at 316, citing
 
 People v Sheirod,
 
 124 AD2d 14, 18). A Judge of this Court granted defendant leave to appeal.
 

 Defendant concedes he committed burglary, but contests the degree. Second degree burglary includes entering a dwelling, while third degree burglary includes only the entry of a building (Penal Law §§ 140.20, 140.25 [2]). A building becomes a dwelling if it is “usually occupied by a person lodging therein at night” (Penal Law § 140.00 [3]). “Where a building consists of two or more units separately secured or occupied, each unit shall be deemed both a separate building in itself and a part of the main building” (Penal Law § 140.00 [2]).
 

 
 *747
 
 Over 100 years have passed since we last addressed the question of what constitutes a “dwelling” in defining the crime of burglary. In
 
 Quinn v People
 
 (71 NY 561), we held that burglary of a dwelling could be committed by breaking into the first floor office of a building in which the upper floors were occupied residences. In that case we construed the then applicable statutory provision which stated that a building in order to be a dwelling must be “joined to, immediately connected with, and part of a dwelling house.” The fact that the first floor commercial space did not have “internal communication” with the upper floor residences was immaterial in light of the statute which strongly suggested that a ground floor commercial space “under the same roof’ of a building otherwise used for residences was, in fact, a dwelling
 
 (see also, People v Rohena,
 
 186 AD2d 509;
 
 People v Johnson,
 
 162 AD2d 267). Wrongful entry into such a building also could have caused the very harm that the increased penalty for burglary of a dwelling was designed to prevent, namely “midnight terror” and the “danger to human life, growing out of the attempt to defend property from depredation”
 
 (Quinn v People,
 
 71 NY, at 567).
 

 The facts here present a somewhat different question. In
 
 Quinn,
 
 there was little doubt that the upper floors were occupied and used for residential purposes. Here, we must determine, under the facts presented, the meaning of “usually occupied by a person lodging therein at night.” In most cases, this determination will be a question of fact for the jury based on the particular situation before it
 
 (see, e.g., People v Lewoc,
 
 101 AD2d 927 [noting factual issue whether house was dwelling which for a time was left unoccupied]). As the long history of this issue instructs, there are myriad factual situations in which the question of what constitutes a dwelling can arise
 
 (see generally,
 
 Annotation, 20 ALR4th 349 [compiling cases regarding burglary and the occupancy of building entered]).
 

 Nonetheless, here we find that the evidence was legally insufficient to support a finding that the school building was a dwelling within the meaning of Penal Law § 140.00 (3). Although prior to 1967, burglary in the second degree required proof of another person’s actual presence in the building wrongfully entered (former Penal Law § 403), the statute since that time has required only that the building be “usually occupied”
 
 (see,
 
 Penal Law § 140.00 [3]). The main case that has examined this term is
 
 People v Sheirod
 
 (124 AD2d 14,
 
 supra).
 
 In that case, a single family home had been left vacant for one year when the family relocated to Colorado on account of a temporary employ
 
 *748
 
 ment assignment. The Court concluded that three factors should be used in analyzing whether the building was, in fact, a dwelling: (1) whether the nature of the structure was such that it was adapted for occupancy at the time of the wrongful entry; (2) the intent of the owner to return; and, (3) whether, on the date of the entry, a person could have occupied the structure overnight
 
 (id.,
 
 at 17). The building satisfied this inquiry in that it was a fully furnished house used as the family residence for 12 to 13 years, utilities remained functioning, the family intended to return after the assignment ended in Colorado, and someone could have stayed overnight on the day of the break-in
 
 {id.,
 
 at 18).
 

 The Court relied on what could be called a temporary vacancy doctrine: a dwelling does not lose its character as such merely because its occupant is temporarily absent
 
 (see, People v Melendez,
 
 148 AD2d 964;
 
 People v Lewoc, supra; see also, Starnes v Commonwealth,
 
 597 SW2d 614 [Ky];
 
 Johnson v Commonwealth,
 
 18 Va App 441, 444 SE2d 559;
 
 State v Black,
 
 627 So 2d 741 [La App 2d Cir]). Before determining whether the structure is only temporarily vacant, however, it must first be determined that the nature of the structure was such that it could be considered a residence to which someone would return, with all its attendant characteristics. In this way, the
 
 Sheirod
 
 analysis substantiated that the house in question was “usually occupied” in the sense that it was normal and ordinary that when the structure was occupied, it was used as a place for overnight lodging. This does not mean, however, that the building must always be a home or what would normally be considered a residence. Frequency of use for overnight lodging, in addition to the nature and character of the building as a place for such lodging when used, can be, and often is, a factor to be considered
 
 (cf., People v Wright,
 
 157 AD2d 534 [brothel a dwelling upon proof that women lodged there]).
 

 An analysis of relevant factors identified in
 
 Sheirod
 
 demonstrates that the building in the present case was not a dwelling. Neither the building as a whole nor the fifth floor office had the customary indicia of a residence and its character or attributes. When the building was occupied, it was used as a school, including offices, employee locker rooms, classrooms and a chapel. There was no residential apartment in the building. Instead, the fifth floor room was concededly an
 
 office
 
 that when occupied was used as an office. The existence of the bed and a chair in two offices was not enough to convert this building into what one would customarily conclude to be a resi
 
 *749
 
 dence, nor were these accommodations used with such frequency to allow a conclusion that the offices were “usually occupied by a person lodging therein at night.” The evidence was clear that these offices were “rarely” used for overnight stays, typically only 20 to 30 times a year. This use is too infrequent, without more, to be usual.
 

 Finally, the Appellate Division’s overreliance on the fact that a person could have been sleeping in the fifth floor office harks back to the time when actual physical presence in the building was the determinative factor, rather than a determination of whether it was “usually occupied.” The fact that on one night a person could have slept in the building could strengthen a conclusion that the building was a dwelling, but, on its own, is of little weight. Indeed, to hold otherwise in this case would convert into a dwelling every office or commercial space with a couch or comfortable chair that could be or infrequently is used for an overnight stay. That is unwarranted in light of the purpose and language of the second degree burglary statute.
 

 Appellant’s remaining contention is unpreserved for our review.
 

 Accordingly, the order of the Appellate Division should be modified by reducing appellant’s conviction from two counts of burglary in the second degree to two counts of burglary in the third degree, and remitting the case to Supreme Court for appellant to be resentenced, and, as so modified, affirmed.
 

 Chief Judge Kaye and Judges Bellacosa, Smith, Levine, Ciparick and Wesley concur.
 

 Order modified, etc.