■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EARL BARNEY, Appellant. [742 NYS2d 451] —Appeal from a judgment of Supreme Court, Monroe County (Fisher, J.), entered April 27, 2000, convicting defendant after a jury trial of, inter alia, burglary in the second degree.

It is hereby ordered that the judgment so appealed from be and the same hereby is affirmed.

Memorandum: Defendant appeals from a judgment convicting him following a jury trial of burglary in the second degree (Penal Law § 140.25 [2]) and attempted petit larceny (§§ 110.00, 155.25). Defendant contends that the People failed to establish that the building he entered unlawfully was a dwelling (*see*

§ 140.00 [3]) and that his conviction of burglary in the second degree therefore is not supported by legally sufficient evidence. Defendant contends in the alternative that Supreme Court erred in denying his request to charge burglary in the third degree (§ 140.20) as a lesser included offense of burglary in the second degree.

The building at issue is a single-family house in the Town of Greece. The sole occupant (decedent) was killed in a motor vehicle accident on August 21, 1999. Prior to his death, decedent had been renting the house from his mother. On August 23, 1999, during a conversation with friends, defendant learned that decedent had died two days earlier and that he had kept marijuana at his house. In the early morning hours of August 24, defendant entered the house intending to steal the marijuana. A neighbor, aware that decedent had died and that his house was unoccupied, observed defendant creeping along the bushes outside decedent's house, and then observed what appeared to be a light in an upstairs bedroom. The neighbor called the police, who apprehended defendant inside the house. At the time of the burglary, the house remained furnished, the utilities were connected, there was food in the refrigerator and decedent's possessions remained in the house.

Defendant contends that the building at issue lost its character as a dwelling upon the death of the sole occupant. We disagree. Although prior to 1967, burglary in the second degree required proof of another person's actual presence in the building wrongfully entered (see former Penal Law § 403), the Penal Law as revised requires only that the building be a dwelling (see § 140.25 [2]). A dwelling is defined as "a building which is usually occupied by a person lodging therein at night" (§ 140.00 [3]). A dwelling does not lose its character as a dwelling based on the temporary absence of its occupant (see People v Quattlebaum, 91 NY2d 744, 748). In cases where an occupant is temporarily absent, a dwelling retains its character as such if the building was adapted for occupancy at the time of the wrongful entry, the occupant intended to return, and, on the date of the entry, a person could have occupied the building overnight (see id., citing People v Sheirod, 124 AD2d 14, 17, lv denied 70 NY2d 656). In this case, the building at issue was adapted for occupancy and a person could have occupied it overnight. We disagree with the dissent that the fact that the occupant had died and could no longer harbor an intent to return to the house compels the conclusion that it lost its character as a dwelling. Rather, we conclude, as did the Court of Appeals of Minnesota in a recent case involving similar facts,

that a building retains its character as a dwelling despite the death of the occupant when it has been used as a residence in the "immediate past" and has not been abandoned (*State v Edwards,* 589 NW2d 807, 811; *cf. People v Ramos,* 52 Cal App 4th 300, 302, 60 Cal Rptr 2d 523, 524; *People v Hider,* 135 Mich App 147, 151-153, 351 NW2d 905, 907-908). Here, a consideration of all the relevant factors supports the conclusion that the dwelling retained its character as such based upon its immediate past residential use.

The holding of the Court of Appeals in *Quattlebaum* (91 NY2d at 748-749) does not compel the result advanced by the dissent. That case involved the issue whether a school building, concededly not a dwelling, could be perceived as such for purposes of convicting defendant of burglary in the second degree. The Court held that it could not, although a fifth floor office contained a bed and it was theoretically possible for someone to have stayed overnight. That holding does not impact the present case, where the building was a dwelling and had been occupied until three days before the burglary. Nor does our decision in *People v Murray* (278 AD2d 898, *lv denied and dismissed* 96 NY2d 804) compel a different result. In that case, the upstairs apartment of the two-apartment residential unit at issue had been vacant for several months, and the downstairs apartment was vacant and had been boarded up by the landlord several weeks earlier. Thus, in *Murray* the building had not been used as a residence in the "immediate past" (*Edwards,* 589 NW2d at 811).

Contrary to defendant's alternative contention, this is not a case in which the issue whether the building was a dwelling is for the jury. Here, there is no reasonable view of the evidence to support a finding that the dwelling had lost its residential character, and thus there is no reasonable view of the evidence that defendant committed the lesser offense of burglary in the third degree but not the greater offense (*see People v Glover,* 57 NY2d 61, 63). We therefore conclude that the court did not err in denying defendant's request for a charge down to burglary in the third degree.

All concur except Green and Hurlbutt, JJ., who dissent in part and vote to modify in accordance with the following memorandum.

Green and Hurlbutt, JJ. (dissenting in part). We respectfully dissent in part. We conclude that, upon the death of its sole occupant, the building at issue lost its character as a dwelling within the meaning of Penal Law § 140.00 (3) and that the evidence is therefore legally insufficient to support defendant's

conviction of burglary in the second degree (§ 140.25 [2]). No reported decision in this State addresses the issue whether, for purposes of Penal Law article 140, a building loses its character as a dwelling upon the death of its sole occupant. Under the common law, burglary was defined as breaking and entering into the dwelling house of another in the nighttime with intent to commit a felony therein (*see* 4 Blackstone, Commentaries on the Laws of England, at 222-228 [1857]). There were no degrees of burglary (*see Quinn v People,* 71 NY 561, 569), and burglary could be committed only in a dwelling (*see* 3 Torcia, Wharton's Criminal Law § 325, at 251 [15th ed]). The requirement that the structure unlawfully entered be a dwelling was crucial "because common-law burglary found its theoretical basis in the protection of man's right of habitation" (LaFave, Criminal Law § 8.13, at 887 [3d ed]; *see* Marks & Paperno, Criminal Law in New York Under the Revised Penal Law § 280, at 332 [1984]). Thus, if a structure was used for habitation, it qualified as a dwelling for purposes of the common-law crime of burglary even when its occupants were absent (*see* Note, *Statutory Burglary—The Magic of Four Walls and a Roof,* 100 U Pa L Rev 411, 419 [1951]). The structure, however, had to be regularly occupied overnight, and not merely be suitable for habitation (*see* 12A CJS, Burglary § 29).

In New York, the common-law definition of burglary has undergone statutory expansion and refinement, but the crime of burglary has never lost its theoretical underpinnings as an offense against habitation. In their original statutory formulations, the most serious burglary crimes, burglary in the first and second degrees, could be committed only in "the dwelling-house of another," and only if a human being was present in the dwelling house at the time of the unlawful entry (Penal Code of 1881 §§ 496, 497; *see* former Penal Law §§ 402, 403). The term "dwelling-house" was defined, consistent with the common law, as "[a] building, any part of which is usually occupied by a person lodging therein at night" (former Penal Law § 400).

As the majority points out, the revised Penal Law, enacted in 1967, eliminated the requirement of the actual presence of a human being as an essential element of burglary in the first and second degrees (*see People v Quattlebaum,* 91 NY2d 744, 747; *People v Sheirod,* 124 AD2d 14, 17, *lv denied* 70 NY2d 656; Marks & Paperno, at 335). At the same time, however, the revised statute retained the most severe penalties for the burglary of a dwelling. Like its common-law and statutory ancestors, burglary in the first degree under the current statute can

be committed only in a dwelling (*see* § 140.30). Burglary in the second degree can be committed in a dwelling (*see* § 140.25 [2]) or in a building that is not a dwelling if certain aggravating circumstances are present (*see* § 140.25 [1]). The common law and prior statutory formulations are preserved virtually intact in the current definition of "dwelling" as "a building which is usually occupied by a person lodging therein at night" (§ 140.00 [3]).

The definition of "dwelling" under the revised Penal Law encompasses structures that are vacant at the time of the burglary, even for an extended period, as long as the vacancy is temporary (*see Sheirod,* 124 AD2d at 17). Indeed, it is now firmly established that "a dwelling does not lose its character as such merely because its occupant is *temporarily* absent" (*Quattlebaum,* 91 NY2d at 748 [emphasis added]; *see People v Ferguson,* 285 AD2d 838, 839; *People v Melendez,* 148 AD2d 964, 965; *Sheirod,* 124 AD2d at 17; *People v Lewoc,* 101 AD2d 927, 928). In this case, however, the absence of the former occupant cannot be characterized as temporary. At issue in this case is whether, in view of the death of its sole occupant, the building that defendant entered unlawfully was "usually occupied" within the meaning of the statute. In determining whether a building satisfies the statutory definition of "dwelling," three factors are relevant: "(1) whether the nature of the structure was such that it was adapted for occupancy at the time of the wrongful entry; (2) the intent of the owner to return; and (3) whether, on the date of the entry, a person could have occupied the structure overnight" (*Quattlebaum,* 91 NY2d at 748, citing *Sheirod,* 124 AD2d at 17). At the time of the burglary, decedent's house was furnished, the utilities were functioning and there was food in the refrigerator. Thus, the house was adapted for occupancy and a person could have occupied it overnight. At the time of the burglary, however, the house had no present or prospective occupant (*see People v Murray,* 278 AD2d 898, 899, *lv denied and dismissed* 96 NY2d 804), i.e., "no one regarded it as his or her place of residence, either permanent or temporary" (*People v Lowe,* 284 AD2d 413, 415, *lv denied* 96 NY2d 921). The sole occupant of the house had died three days earlier, and the owner lived elsewhere and did not intend to use the house as her residence. Absent an identifiable person who intended to use the house for overnight lodging, it was not "usually occupied" and thus did not constitute a "dwelling" (*see id.*; *Murray,* 278 AD2d at 900; *cf. Sheirod,* 124 AD2d at 18).

Contrary to the conclusion of the majority, we conclude that

our recent decision in *Murray* compels the conclusion that the building at issue was not a dwelling. The building in *Murray*, consisting of two apartments, was neither leased to tenants nor occupied by the owner or any other identifiable person, but both apartments could have been occupied overnight. The buildings in *Murray* and in this case were each designed for and capable of occupancy, but neither was occupied, in *Murray* because of the lack of a tenant and here because of death. The length of time in which the apartments in *Murray* were unoccupied had no bearing on our conclusion that the building was not a dwelling at the time of the burglary. Rather, we concluded simply that the building was not a dwelling because "there was no occupant, the owner lived elsewhere and neither apartment was rented at the time of the burglary" (*Murray*, 278 AD2d at 900). Similarly, in this case there was no occupant, the owner lived elsewhere and there was no identifiable person who intended to use the building for overnight lodging.

It is important to note, moreover, that our decision in *Murray* rests squarely upon the historical foundation of burglary as an offense against habitation. From at least the time of Blackstone, burglary of a dwelling has been considered among the most serious crimes because of "the midnight terror excited, and the liability created by it of danger to human life, growing out of the attempt to defend property from depredation" (*Quinn*, 71 NY at 567; *see Murray*, 278 AD2d at 900; 4 Blackstone, at 222; LaFave, at 887). Under the current Penal Law, the burglar of a building that is not a dwelling is punished as severely as the burglar of a dwelling only if certain aggravating circumstances, creating an equally serious danger to human life, are present. Specifically, burglary of a building is equivalent to burglary of a dwelling only if the burglar or another participant is armed with explosives or a deadly weapon; causes physical injury to a non-participant; uses or threatens the immediate use of a dangerous instrument; or displays a pistol, revolver, rifle, shotgun, machine gun or other firearm (*see* Penal Law § 140.25 [2]). The death of the sole occupant of the house and the absence of any identifiable person intending to take his place eliminated the danger to human life that the higher degrees of burglary protect against.

Our analysis of case law from other jurisdictions further supports our conclusion that the building defendant entered unlawfully was not a dwelling. Courts in other jurisdictions generally adhere to the view that a structure is a dwelling for purposes of the crime of burglary if there is an identifiable owner or occupant who intends to use the structure as a dwell-

ing (see e.g. *People v Pearson*, 183 Ill App 3d 72, 74-75, 538 NE2d 1202, 1203, *lv denied* 127 Ill 2d 633, 545 NE2d 124; *see generally* Annotation, *Occupant's Absence from Residential Structure as Affecting Nature of Offense as Burglary or Breaking and Entering*, 20 ALR4th 349). In cases in which the structure is vacant at the time of the burglary, the intent of the owner or occupant to return is generally the controlling factor in determining whether the structure is a dwelling (see· *State v Smith*, 121 NC App 41, 45, 464 SE2d 471, 474, *appeal dismissed and lv denied* 342 NC 663, 467 SE2d 732; *State v Kowski*, 423 NW2d 706, 710 [Minn]; *People v Hider*, 135 Mich App 147, 151-153, 351 NW2d 905, 907-908). Thus, a structure is not a dwelling if the occupants leave with the intent to abandon it (see *State v Scarberry*, 187 W Va 251, 254, 418 SE2d 361, 364; *State v Teasley*, 719 SW2d 148, 150 [Tenn]; *Wallace v State*, 63 Md App 399, 407, 492 A2d 970, 975, *cert denied* 304 Md 301, 498 A2d 1186). Conversely, a structure remains a dwelling, regardless of the length of time that it is vacant, as long as the occupant does not intend to abandon it (see *Kowski*, 423 NW2d at 710; *Hider*, 135 Mich App at 151, 351 NW2d at 907). It follows, therefore, that a structure loses its character as a dwelling when it is vacant as the result of the death of its sole occupant (see *People v Ramos*, 52 Cal App 4th 300, 302, 60 Cal Rptr 2d 523; *Hider*, 135 Mich App at 153, 351 NW2d at 908; *but see State v Edwards*, 589 NW2d 807, 811 [Minn]). "To put it plainly, a dead [person] is not using a house for a 'dwelling' and there is no way to say that a dead man is going to return or that he has an 'intent' of any kind" (*Ramos*, 52 Cal App 4th at 302, 60 Cal Rptr 2d 524).

Thus, based upon our analysis of the history and purpose of Penal Law article 140 and our review of authorities from this State and other jurisdictions, we conclude that the building once occupied by decedent lost its character as a dwelling upon his death. We therefore would modify the judgment by reducing the conviction of burglary in the second degree to burglary in the third degree (Penal Law § 140.20) and vacating the sentence imposed thereon, and we would remit the matter to Supreme Court, Monroe County, for sentencing on that conviction. Present—Pigott, Jr., P.J., Green, Hurlbutt, Kehoe and Lawton, JJ.