Ewell COCHRAN, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2001–SC–0738–MR.

Supreme Court of Kentucky.

Sept. 18, 2003.

Karen Shuff Maurer, Assistant Public Advocate, Department of Public Advocacy, Frankfort, Counsel for Appellant.

A.B. Chandler, III, Attorney General of Kentucky, N. Susan Roncarti, Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, Counsel for Appellee.

Opinion of the Court by Justice JOHNSTONE.

Appellant, Ewell Cochran, was convicted of three counts of first-degree burglary, one count of second-degree burglary, and ten counts of third-degree burglary. He was sentenced to a total of fifty years' imprisonment and appeals to this Court as a matter of right. Ky. Const. § 110(2)(b). On appeal, he argues that his conviction for second-degree burglary must be reversed because the house of a recently deceased owner and sole resident is not a "dwelling" within the meaning of the burglary statutes. Further, he argues that his conviction must be reversed because the trial court failed to excuse a juror for cause. Finally, he argues that he is entitled to a new sentencing hearing because the trial court erred in admitting evidence of a prior conviction that was over thirty years old. For the reasons set forth below, we affirm the judgment of the Rowan Circuit Court.

## I. Dwelling

Cochran argues that the trial court erred in instructing the jury on second-degree burglary in connection with the break-in and theft of items from one Junior Caskey's trailer home. Caskey had died one week prior to the break-in and, therefore, Cochran argues that the trailer was not a "dwelling" within the meaning of the burglary statutes. We disagree.

"A person is guilty of burglary in the second degree when, with the intent to commit a crime, he knowingly enters or remains unlawfully in a *dwelling*." KRS 511.030(1) (emphasis added). "Dwelling" is defined as "a building which is usually occupied by a person lodging therein." KRS 511.010(2). Under this definition, a building does not have to be occupied at the time of the crime charged to constitute a "dwelling." *See Haynes v. Common-*

*wealth,* Ky., 657 S.W.2d 948, 952 (1983); 13 Am.Jur.2d *Burglary* § 8 (online edition updated May 2003). "In cases where an occupant is temporarily absent, a dwelling retains its character as such if the building was adapted for occupancy at the time of the wrongful entry, the occupant intended to return, and, on the date of the entry, a person could have occupied the building overnight." *People v. Barney,* 294 A.D.2d 811, 812, 742 N.Y.S.2d 451, 453 (N.Y.A.D. 4 Dept.2002) (construing a New York statute that defines "dwelling" identical to Kentucky's statutory definition of the same term), *aff'd,* 294 A.D.2d 811, 742 N.Y.S.2d 451 (2002).

Under Cochran's argument, Caskey's death created a permanent absence from the trailer, which precluded a finding that Caskey intended to return to the trailer. But, the term "occupant" is broader in meaning than "owner" or "resident." For example, in *Haynes,* we held that, despite the death of the owner of a house, the house that the appellant wrongfully entered was still a "dwelling" based on its occasional occupancy by the owner's son and evidence that the house was not empty and had not been abandoned at the time of the unlawful entry. *Haynes,* 657 S.W.2d at 952. Therefore, whether a building is a "dwelling" turns on its capacity, at the time of unlawful entry, of being occupied overnight *and* the intent of lawful or authorized persons to use it as such.

The record shows that Caskey's trailer was still furnished, had utility service, and had not been abandoned. While there was no evidence that anyone actually occupied the trailer after Caskey's death, cases from other jurisdictions hold that—in cases of a temporary vacancy created by the death of a building's sole resident—a building does not lose "dwelling" status when the building (1) has been used as a residence in the "immediate past," (2) is

capable of occupancy at the time of unlawful entry, and (3) has not been abandoned. *Barney,* 294 A.D.2d at 813, 742 N.Y.S.2d 451; *State v. Edwards,* 589 N.W.2d 807, 811 (Minn.Ct.App.1999). This rule is consistent with the purpose of the burglary statutes to "encompass all unlawful intrusions which are accompanied by alarm and danger to occupants." *Litton v. Commonwealth,* Ky., 597 S.W.2d 616, 617 (1980) (quoting the 1971 commentary to the penal code).

The time immediately following a person's death is often hectic and chaotic for the deceased's family, friends, and loved ones. It is a time of gathering, which often means travel for many of those coming together to remember and to share their grief and sorrow. Use of the deceased's home as a place of temporary residence in these circumstances is common and is to be expected. It should not be discounted by miscreants who would seek to take advantage of the misfortune of others. Due to the emotional stress underlying the necessity of such temporary occupancy, the need is great to offer strong protection against the "alarm and danger" inherent in unlawful entry into a dwelling. Thus, given the potential for occupancy and the sensitivities of the potential occupants, it is reasonable to construe "dwelling" to include buildings that have been occupied in the immediate past by a recently deceased resident. Therefore, we hold that the trial court did not err in instructing the jury on second-degree burglary.

## II. Failure to Excuse a Juror for Cause

■ Cochran argues that an unidentified juror (Juror X) should have been excused for cause based on her relationship with the Commonwealth's Attorney. We disagree.

According to the record, Juror X volunteered during voir dire that the Commonwealth's Attorney had "represented [her] in a case in front of the Grand Jury." A discussion at the bench disclosed that Juror X was a crime victim and that the Commonwealth's Attorney office "worked extensively on the presentation of the case." Juror X, however, worked primarily with the Commonwealth's Attorney victim advocate, rather than with the Commonwealth's Attorney himself. Moreover, Juror X and the Commonwealth's Attorney only spoke with each other a couple of times in connection with the case. Finally, Juror X stated affirmatively that she could put aside her past dealings with the Commonwealth's Attorney and that she could be fair and impartial.

 Some relationships between a potential juror and an attorney, party, victim, or witness are so close that the implied bias from the relationship "transgresses the concept of a fair and impartial jury." *Sholler v. Commonwealth*, Ky., 969 S.W.2d 706, 709 (1998). The relationship here is not one of them. Thus, we examine the trial court's decision for abuse of discretion or clear error. *Id.* at 708. A careful review of the record reveals neither an abuse of discretion, nor a clear error by the trial court in denying the motion to excuse Juror X for cause.

### III. Admission of the 31–Year–Old Conviction

 Finally, Cochran argues that the trial court erred in admitting a conviction from 1970 in the penalty phase. Again, we disagree.

We begin by noting that this error is not preserved and is subject to the palpable error rule of RCr 10.26.

Cochran starts with a concession that there are no time restrictions on the age of convictions that can be introduced in the penalty phase under the so-called truth-in-sentencing statute, KRS 532.055. *See McKinnon v. Commonwealth*, Ky.App., 892 S.W.2d 615, 616 (1995). Cochran, however, argues that an outer limit was implied in *Grenke v. Commonwealth*, Ky., 796 S.W.2d 858 (1990). Presumably, Cochran's argument is that the relevancy of a conviction lessens with time and makes exclusion of the evidence of the conviction more likely under KRE 403. Indeed, this is confirmed by *McKinnon:*

> Trial judges are vested with reasonable discretion in determining whether to admit evidence of prior convictions during the sentencing phase. *Grenke* makes it clear that there is no "bright line" rule to be applied by the trial court during this balancing test. Having reviewed the arguments and evidence before us, we are unable to conclude that the trial judge's ruling was clearly erroneous or that he abused his discretion in this instance.

*McKinnon,* 892 S.W.2d at 616.

In this case, the trial court was not given an opportunity to exercise its discretion to determine whether the conviction should have been excluded under KRE 403. Even if the conviction—which was for armed robbery—should have been excluded, the inclusion of it in the penalty phase did not rise to the level of palpable error.

Additionally, Cochran argues that introduction of the conviction resulted in palpable error because it included a recitation of defense counsel's motion for a continuance. He argues that this information went beyond evidence of the general nature of the crime and was reversible error under *Robinson v. Commonwealth*, Ky., 926 S.W.2d 853, 855 (1996). Even if the information went beyond what is allowed by *Robinson,* the information itself concerned the sub-

stance of the anticipated and exculpatory testimony of a defense witness. Thus, the information is not particularly prejudicial and certainly not unduly so. If the information regarding the motion for a continuance was admitted in error, the error was not palpable.

For the reasons set forth above, the judgment of the Rowan Circuit Court is affirmed.

LAMBERT, C.J.; GRAVES and WINTERSHEIMER, JJ., concur. COOPER, J., concurs in part and dissents in part by separate opinion, with KELLER and STUMBO, JJ., joining that separate opinion.

COOPER, Justice, concurring in part and dissenting in part.

I concur in the affirmance of all of Appellant's convictions except his conviction of burglary in the second degree under Count 15 of the indictment. That charge dealt with the burglary of the former dwelling of Junior Caskey, deceased.

An additional (third) element which distinguishes third-degree burglary, a Class D felony, from second-degree burglary, a Class C felony, is the nature of the property in or upon which the offense occurred. If the property is a "building," the offense is third-degree burglary, KRS 511.040(1); if it is a "dwelling," the offense is second-degree burglary, KRS 511.030(1). The definitions of "building" and "dwelling" are similar, but not identical. A "building" is defined, inter alia, as "any structure ... [w]here any person lives," KRS 511.010(1)(a); whereas, a "dwelling" is defined as "a building which is usually occupied by a person lodging therein." KRS 511.010(2). Thus, every dwelling is a building, but every building is not a dwelling. Since the burglary of a building is a Class D felony, KRS 511.040(2),

and the burglary of a dwelling is a Class C felony, KRS 511.030(2), the legislature obviously considered the distinction to be significant and the burglary of a dwelling to be more grievous than the burglary of a mere building.

*Colwell v. Commonwealth,* Ky., 37 S.W.3d 721, 725–26 (2000). Obviously, the legislature did not classify the burglary of a dwelling as a more serious offense than the burglary of a building because of its structure or contents. Rather, the higher classification reflects the greater danger inherent in the burglary of a building "usually occupied by a person lodging therein," *i.e.,* that the person usually lodging therein might be killed or injured while defending against the depredation.

The evidence was undisputed that Junior Caskey died an accidental death approximately one week prior to Appellant's unlawful entry into his residence. Despite the majority opinion's gratuitous judicial notice that bereaved out-of-town relatives sometimes gather at their decedent's former residence while attending the decedent's funeral, no evidence was introduced in this case that Junior Caskey had any out-of-town relatives, that his funeral was still pending, that anyone had even entered the residence or used it for any purpose between the date of his death and the date of the burglary, or that anyone intended to use it as a residence. No member of Caskey's family or anyone else connected with him testified at Appellant's trial. Detective Anderson testified that he learned of the burglary from an anonymous tip. Kevin Easterling, Appellant's accomplice in all of the burglaries, testified for the Commonwealth that he and Appellant targeted Caskey's former residence precisely because they knew he was deceased and because they had heard a rumor that Caskey had hidden $250,000.00 in the residence before his death. (The bur-

glary failed to produce the rumored cache.)

There are no Kentucky cases directly on point. In *Haynes v. Commonwealth*, Ky., 657 S.W.2d 948 (1983), the owner of the burgled residence was deceased but the owner's son had continued to reside in the residence on an intermittent basis. In a related case, however, we held in *Bray v. Commonwealth*, Ky., 68 S.W.3d 375 (2002), a defendant convicted of arson in the first degree, KRS 513.020, was entitled to an instruction on arson in the second degree, KRS 513.030, as a lesser included offense on evidence that the persons whose bodies were found in the burned residence were already deceased when the fire was set. *Id.* at 385. *See also State v. Ward*, 93 N.C.App. 682, 379 S.E.2d 251, 253–54 (1989) (arsoned mobile home was not a dwelling since owner-occupant had died two days before the fire was set).

The majority opinion primarily relies on *State v. Edwards*, 589 N.W.2d 807 (Minn. Ct.App.1999), and *People v. Barney*, 294 A.D.2d 811, 742 N.Y.S.2d 451 (N.Y.App. Div.2002). Though I disagree with results reached in those cases, each is factually distinguishable from the case *sub judice*. In *Edwards*, the occupant had been murdered and her body remained hidden in a closet during the five days the defendants used her residence as a "crack house." The Minnesota Court of Appeals held that the residence retained its character as a "dwelling" because it had been used as a residence in the "immediate past" and had not been abandoned. 589 N.W.2d at 811. In *Barney*, the lodger had been dead two days but the utilities were still connected and there was food in the refrigerator, evidence that the residence was at least ready for habitation at the time of the burglary. No such evidence was introduced in this case. More importantly, there was no evidence that the defendant

in *Barney* was aware that the owner-occupant of the residence was deceased so that his *mens rea* was no less than if the former resident had still been alive. Interestingly, the majority relies on the following test adopted in *Barney:*

> In cases where an occupant is *temporarily* absent, a dwelling retains its character as such if the building was adapted for occupancy at the time of the wrongful entry, the occupant *intended to return*, and, on the date of the entry, a person could have occupied the building overnight.

*Id.* at 453 (emphasis added) (citations omitted). Obviously, Junior Caskey's absence was not temporary and he could not have intended to return. Although there was evidence that his furniture had not been removed, no witness testified that the utilities were still connected or that the building was otherwise habitable.

In *People v. Ramos*, 52 Cal.App.4th 300, 60 Cal.Rptr.2d 523 (1997), the owner-occupant of the burgled residence had died of natural causes prior to the burglary and his dead body was found still in his bed by the burglar during the course of the burglary. The California Court of Appeal succinctly held that "a dead body is not using a house for a 'dwelling' and there is no way to say that a dead man is going to return or that he has an 'intent' of any kind." *Id.* at 524. In *People v. Hider*, 135 Mich.App. 147, 351 N.W.2d 905 (1984), the owner had died the day before the burglary. Michigan's burglary statute defined an "occupied dwelling house" as a building "habitually used as a place of abode." Holding that the building was not a "dwelling house," the Court stated:

> Mrs. Clark's house was not an "occupied dwelling house" at the time of the crime. Mrs. Clark's absence can hardly be considered temporary and there was no evidence that anyone had shared her home

and intended to either remain in it or to return to it after a temporary absence. *Id.* at 908. The same holds true in the case *sub judice.*

Though Appellant could properly have been convicted of third-degree burglary under Count 15 of the indictment, he was improperly convicted of second-degree burglary. Accordingly, I dissent from the majority opinion insofar as it affirms that conviction.

KELLER, and STUMBO, JJ., join this opinion concurring in part and dissenting in part.