Egan Jr., J.
Appeal from a judgment of the County Court of Schoharie County (Bartlett III, J.), rendered February 3, 2010, upon a verdict convicting defendant of the crimes of burglary in the second degree, criminal sexual act in the third degree, rape in the third degree (two counts) and endangering the welfare of a child (two counts).
Defendant was charged in a 15-count indictment with various crimes based upon allegations that, among other things, he knowingly entered property located at 306 Kingsley Road in the Town of Gilboa, Schoharie County on or about October 22, 2007 with the intent to commit a sexual crime against victim A (born in 1992) and, in conjunction therewith, compelled victim A’s sister — victim B — to act as a lookout. Following a lengthy jury *1079 trial, defendant was convicted of burglary in the second degree, criminal sexual act in the third degree (victim A), two counts of rape in the third degree (victim A) and two counts of endangering the welfare of a child (victims A and B). Prior to sentencing, defendant moved to set aside the verdict upon the ground that he had been denied the right to a public trial. County Court denied defendant’s motion and thereafter sentenced defendant to an aggregate prison term of 12 years followed by 10 years of postrelease supervision. This appeal by defendant ensued.
Defendant initially contends that he was denied the right to a public trial — an argument premised upon the fact that a local attorney who wished to observe defendant’s trial met with resistance from a court attendant when he first attempted to enter the courtroom. Assuming this argument has been adequately preserved for our review, we disagree. The case law makes clear that “[a] denial of the public trial right requires an affirmative act by the trial court excluding persons from the courtroom, which in effect explicitly overcomes the presumption of openness” (People v Peterson, 81 NY2d 824, 825 [1993]; accord People v Martin, 16 NY3d 607, 613 [2011]; see People v Torres, 97 AD3d 1125, 1127 [2012], affd 20 NY3d 890 [2012]). Here, it is undisputed that County Court did not close the courtroom to spectators, defendant concedes that the attorney in question, who does not appear to have had any connection to defendant’s case, was in fact allowed to enter the courtroom and observe the proceedings (compare People v Moise, 110 AD3d 49, 54 [2013]) and the record does not otherwise support defendant’s entirely speculative assertion that unidentified members of the public were actually excluded from the proceedings. Accordingly, no violation of defendant’s 6th Amendment right to an open trial was established.
Nor are we persuaded that County Court erred in failing to grant defendant’s challenges for cause with respect to juror Nos. 5, 10 and 14. Insofar as is relevant here, a juror may be discharged for cause where he or she “has a state of mind that is likely to preclude him [or her] from rendering an impartial verdict based upon the evidence adduced at the trial” or “bears some . . . relationship to [a prospective witness or counsel] of such nature that it is likely to preclude him [or her] from rendering an impartial verdict” (CPL 270.20 [1] [b], [c]). In this regard, although juror No. 5 indicated that she had read an article about the case shortly before the trial began, she thereafter indicated that she could view the evidence fairly (see People v Russell, 55 AD3d 940, 941 [2008], lv denied 11 NY3d 900 [2008]; cf. People v Reichel, 110 AD3d 1356, 1359 [2013], lv *1080 denied 22 NY3d 1090 [2014]) and nothing in the record suggests that she had formed an opinion as to defendant’s guilt or innocence that cast serious doubt upon her ability to render an impartial verdict (compare People v Harris, 19 NY3d 679, 685-686 [2012]). Similarly, although juror Nos. 10 and 14 each indicated that they knew the Assistant District Attorney prosecuting the case and/or another member of the District Attorney’s office, “[n]ot all relationships between a prospective juror and a potential witness or interested party require disqualification for cause as a matter of law” (People v Furey, 18 NY3d 284, 287 [2011]). Rather, “[t]he frequency of contact and [the] nature of the parties’ relationship are to be considered in determining whether disqualification is necessary” (id.-, accord People v Greenfield, 112 AD3d 1226, 1228 [2013]). Based upon our review of the voir dire, we are satisfied that the challenged relationships “were either not particularly close ones or arose in a professional context and thus were not of a type to preclude . . . juror [Nos. 10 and 14] from rendering an impartial verdict” (People v Molano, 70 AD3d 1172, 1174 [2010], lv denied 15 NY3d 776 [2010]; see People v Thompson, 92 AD3d 1139, 1140 [2012], affd 21 NY3d 555 [2013]; compare People v Smith, 52 AD3d 847, 847-848 [2008]; People v Clark, 125 AD2d 868, 869 [1986], lv denied 69 NY2d 878 [1987]).
Finally, we cannot say that County Court abused its discretion in denying defendant’s additional challenge for cause as to juror No. 14 based upon concerns that the trial schedule would interfere with her employment responsibilities. As this Court has observed, “[s]light interference with employment or inconvenience related to sitting on a jury are insufficient grounds to support a challenge for cause . . . [because] almost every potential juror is inconvenienced by taking a week or more away from one’s work or normal routine, and . . . each has personal concerns which could cause some distraction from [the] trial” (People v Wilson, 52 AD3d 941, 942 [2008], lv denied 11 NY3d 743 [2008]). Accordingly, dismissal is not warranted unless the juror indicates that he or she would be distracted or preoccupied to the extent that it would preclude him or her from deliberating in a fair and impartial manner (cf. People v Clark, 52 AD3d 860, 862-863 [2008], lv denied 11 NY3d 831 [2008]; People v Danton, 27 AD3d 354, 354-355 [2006], lv denied 7 NY3d 754 [2006]; People v Sipas, 246 AD2d 408, 408 [1998]). Here, none of the answers given by juror No. 14 in response to counsels’ or County Court’s questioning in any way intimated that she would be incapable of rendering an impartial verdict (cf. People v Nettles, 88 AD3d 492, 493 [2011], lv denied 18 NY3d 861 [2011]; People v Morales, 36 AD3d 631, 632 [2007], lv denied *1081 8 NY3d 925 [2007]; People v Butler, 281 AD2d 333, 333 [2001], Iv denied 96 NY2d 899 [2001]). Accordingly, County Court did not abuse its discretion in failing to discharge juror No. 14 upon this ground.
Defendant next asserts that County Court improperly curtailed his right to present a defense by, among other things, limiting his efforts to impeach the testimony of George Bird, the State Police investigator involved in this matter. Here, while cross-examining Bird, defense counsel inquired as to whether Bird had attempted to persuade a particular young girl — who was not one of the victims identified in the underlying indictment — to accuse defendant, a family friend, of raping her. Bird admitted questioning the child as to whether defendant ever had sex with her, but he denied that he yelled, pounded on a table or otherwise attempted to coax or coerce a statement from this individual. Defense counsel then called the child as a witness and sought to impeach Bird’s credibility by eliciting testimony to the effect that Bird did pound on the table and generally attempted to “browbeat her into accusing [defendant] of sexually abusing her.” Defense counsel also called the child’s mother as a witness — seeking to establish that when Bird’s alleged efforts to intimidate the child failed, the caseworker who had been present for the underlying interview endeavored to employ similar tactics with the child’s mother. In both instances, County Court precluded the sought-after testimony.
“The general rule of evidence in this State concerning the impeachment of witnesses with respect to collateral matters is that the cross-examiner is bound by the answers of the witness to questions concerning collateral matters inquired into solely to affect credibility. . . . [Hence,] the party who is cross-examining a witness cannot introduce extrinsic documentary evidence or call other witnesses to contradict a witness’ answers concerning collateral matters solely for the purpose of impeaching that witness’ credibility” (People v Pavao, 59 NY2d 282, 288-289 [1983] [internal quotation marks and citation omitted]; see People v Jimmeson, 101 AD3d 1678, 1679 [2012], lv denied 21 NY3d 944 [2013]; People v Salim, 96 AD3d 1484,1485 [2012], lv denied 19 NY3d 1028 [2012]; see also People v Hanley, 5 NY3d 108, 112 [2005]). While it is true, as defendant points out, that “extrinsic proof tending to establish a reason to fabricate is never collateral and may not be excluded on that ground” (People v Hudy, 73 NY2d 40, 56 [1988]; accord People v Alnutt, 101 AD3d 1461, 1465 [2012], lv denied 21 NY3d 941 [2013], cert denied 571 US —, 134 S Ct 1035 [2014]; see People v Grant, 60 AD3d 865, 865 [2009]), this general principle is of no aid to defendant here.
*1082 As a starting point, Bird’s alleged intimidation tactics were not directed at a complaining witness (compare People v Hudy, 73 NY2d at 57-58). The child in question, who steadfastly denied that defendant ever touched her, did not implicate defendant in any wrongdoing (compare id.; People v Alnutt, 101 AD3d at 1465; People v Grant, 60 AD3d at 865), nor did she have any testimony to offer relative to either victim A’s or victim B’s potential motive to lie (compare People v Diaz, 85 AD3d 1047, 1049-1050 [2011], affd 20 NY3d 569 [2013]; People v Gomez, 79 AD3d 1065, 1066-1067 [2010]; People v McFarley, 31 AD3d 1166, 1166-1167 [2006]; People v Sampel, 16 AD3d 1023, 1024 [2005]). At best, the child’s testimony would have demonstrated that Bird lied about pounding on the table and attempting to intimidate her — issues that, to our analysis, concern collateral matters designed solely to impeach Bird’s credibility. To the extent that defendant argues that the sought-after testimony was relevant to establish that Bird was “out to get” him, that issue was fully explored at trial, and the requested testimony was in no way relevant to defendant’s unsubstantiated assertion that Bird “planted” the DNA evidence against him. Under these circumstances, we discern no abuse of discretion in County Court’s curtailment of defense counsel’s questioning of the child or her mother.
We reach a similar conclusion with respect to the limits placed upon defense counsel’s cross-examination of both victim B and the victims’ brother, as well as defense counsel’s direct examination of Kerrianne Dahlberg. Based upon our review of the relevant witnesses’ testimony and defense counsel’s proposed lines of questioning, we do not find that the reasonable restrictions imposed upon counsel’s inquiries impaired defendant’s ability to present a defense. Moreover, even assuming that the record revealed some impropriety in this regard, we nonetheless would conclude that any such error was harmless in light of the overwhelming evidence of defendant’s guilt (see People v Crimmins, 36 NY2d 230, 237 [1975]; cf. People v Hilliard, 49 AD3d 910, 913 [2008], lv denied 10 NY3d 959 [2008]; compare People v Thompson, 111 AD3d 56, 67-68 [2013]).
We do, however, find merit to defendant’s claim that there is legally insufficient evidence to support his conviction of burglary in the second degree under count 7 of the indictment.[1] Insofar as is relevant here, a person is guilty of burglary in the second degree when he or she “knowingly enters or remains *1083 unlawfully in a building with intent to commit a crime therein, and when . . . [t]he building is a dwelling” (Penal Law § 140.25 [2]; see People v Pierce, 106 AD3d 1198, 1199 [2013]). A “dwelling,” in turn, is defined as “a building which is usually occupied by a person lodging therein at night” (Penal Law § 140.00 [3]; see People v Cummings, 16 NY3d 784, 785 [2011], cert denied 565 US —, 132 S Ct 203 [2011]; People v Ferguson, 285 AD2d 838, 839 [2001], lv denied 97 NY2d 641 [2001]). In ascertaining whether a particular structure constitutes a dwelling, we will consider “(1) whether the nature of the structure was such that it was adapted for occupancy at the time of the wrongful entry; (2) the intent of the owner to return; and, (3) whether, on the date of the entry, a person could have occupied the structure overnight” (People v Quattlebaum, 91 NY2d 744, 748 [1998]; see People v Barney, 294 AD2d 811, 812 [2002], affd 99 NY2d 367 [2003] ).
Here, although the property in question — 306 Kingsley Road — possessed some of the characteristics of a residential dwelling, it is unclear whether, on the day of the underlying crime, the structure was suitable for occupancy.[2] More to the point, the homeowners testified that no one lived at 306 Kingsley Road during either 2007 or 2008 and, with the exception of one or two evenings in July 2007, no one occupied the property overnight. While it is true that “a dwelling does not lose its character as such merely because its occupant is temporarily absent” (People v Ferguson, 285 AD2d at 839 [internal quotation marks and citation omitted]; see People v Henry, 64 AD3d 804, 805 [2009], lv denied 13 NY3d 860 [2009]), the record here demonstrates that no one usually occupied 306 Kingsley Road — either before, during or after the crime — and, absent such occupancy, there could be no corresponding intent to return (see People v Lowe, 284 AD2d 413, 414-415 [2001], lv denied 96 NY2d 921 [2001]; People v Murray, 278 AD2d 898, 899-900 [2000], lv dismissed and denied 96 NY2d 804 [2001]; compare People v Barney, 99 NY2d 367, 370-371 [2003]; People v Montgomery, 1 AD3d 984, 984 [2003], lv denied 1 NY3d 631 [2004] ; People v Gulnac, 309 AD2d 1070, 1070-1071 [2003]; People v Chandler, 307 AD2d 585, 585-586 [2003], lv denied 100 NY2d 641 [2003]; People v Ferguson, 285 AD2d at 839). Under these circumstances, we find that the People failed to establish that the structure in question was a dwelling and, therefore, we find that there is legally insufficient evidence to support defendant’s conviction of burglaiy in the second degree. The evidence *1084 adduced at trial is, however, legally sufficient to establish burglary in the third degree (see Penal Law § 140.20), and defendant’s conviction is reduced accordingly (see People v Murray, 278 AD2d at 898). Defendant’s remaining contentions, to the extent not specifically addressed, have been examined and found to be lacking in merit.
Peters, P.J., Stein and Rose, JJ., concur. Ordered that the judgment is modified, on the law, by reducing defendant’s conviction of burglary in the second degree under count 7 of the indictment to burglary in the third degree; vacate the sentence imposed on said conviction and matter remitted to the County Court of Schoharie County for resentencing; and, as so modified, affirmed.

. With respect to this count, defendant was convicted based upon his knowing and unlawful entry into 306 Kingsley Road on or about October 22, 2007 with the intent to commit the crime of rape in the third degree.

. During a brief period of use in July 2007, the homeowners rented a “porta-potty” for the structure.