JOHN QUINN, Plaintiff in Error, v. THE PEOPLE, Defendants in Error.

In an indictment under the Revised Statutes (2 R. S., 668, § 10, sub. 1), for burglary in the first degree, it is proper to aver the ownership of the dwelling-house in a partnership, where the facts in the case warrant it.

An indictment for burglary in the first degree charged a breaking and entering into the dwelling-house of F. K. and J. F. L., who, it was stated, were partners in business, under the firm-name of K. & L. It appeared on the trial that the persons named in the indictment were copartners, and, as such, held and occupied two adjoining buildings, the lower stories of which opened into each other, and were used as stores for their business. In the upper rooms one of the partners and other persons lived, and were present upon the night of the burglary. There was no internal communication between the stores and the upper rooms, but to reach the latter it was necessary to go into a yard fenced in, and thence up stairs. The prisoner broke into one of the stores.

*Held,* that the ownership of the property was properly charged in the indictment; and that the entry was into a "dwelling-house," within the meaning of the statute.

*It seems,* however, that, to constitute the offense, there must be a dwelling-house to which the store, room or other place entered belongs, as a part, and that, where the room entered is severed from the rest of the building by being let to a tenant, who does not sleep in it, and there is no internal communication with the rest of the building, an entry therein is not an entry into a dwelling-house within the meaning of the statute.

The provision of the Revised Statutes (2 R. S., 668, § 16) declaring that no building shall be deemed a dwelling-house. within the meaning of the provisions relating to burglary, unless the same be found to be joined to, immediately connected with, and part of a dwelling-house, was intended to mean no structure, itself a building separate from, and independent of the dwelling-house of the owner, *i. e.,* uninhabited out-houses, isolated from the dwelling.

The authorities defining burglary at common law and under the statute collated and discussed.

(Argued September 17, 1877; decided January 15, 1878.)

ERROR to the General Term of the Supreme Court, in the second judicial department, affirming a judgment of the Court of Sessions of Richmond county, convicting the plaintiff in error of the crime of burglary in the first degree. (Reported below, 11 Hun, 336.)

The indictment charged plaintiff in error with the breaking and entering, in the night time, "the dwelling-house of Frederick Kohnsen and John F. Lubkin, being copartners in business under the firm-name and style of Kohnsen & Lubkin." Kohnsen & Lubkin were partners as alleged, and held and occupied two adjoining buildings, the lower stories of which they used and occupied as stores for the purposes of their business. These stores opened into each other. No one slept in the stores; Kohnsen and other persons lived over one of the stores, and were in their apartments at the time of the alleged burglary. There was no interior communication between the lower and upper stories; but to reach the latter, it was necessary to pass into a yard fenced in, and from thence to go up a flight of stairs. The wrongful entry was into one of the stores. The counsel for plaintiff in error on the trial asked the court to take from the jury the ques-

tion of burglary in the first degree, on the ground that breaking into the store did not constitute that offense.  The motion was denied, and counsel duly excepted; counsel requested the court to charge that there could be no conviction of burglary in the first degree, which request the court refused, and counsel duly excepted.

*Max C. Huebner*, for plaintiff in error.  An occupation of a house, by others than the owner or his family, or his domestic servants, would not constitute it the owner's dwelling-house.  (*Harris' Case*, 2 Leach, 701; *Davis alias Silks Case*, id., 876; *Rex* v. *Martin*, R. & R., 108; *Rex* v. *Flanagan*, id., 187; *Lyon's Case*, 1 id., 190; *Fuller's Case*, id., 191.)  There could not have been a terror created in the mind of the firm, and there could not have been such an invasion, in its right of habitation, as to constitute burglary.  (3 R. S., 947; *Rex* v. *Margetts*, 2 Leach, 930; *Rex* v. *Witt*, R. & M. C. C. R., 284; *Armour* v. *State*, 3 Hump., 379.)  The crime, under the evidence, was at most burglary in the third degree.  (3 R. S., 948.)

*John Croak*, for defendants in error.  The building broken into was a dwelling.  (*Rex* v. *Gibson*, 1 Leach, 357; *Robertson's Case*, 4 City Hall R., 63; Arch. Cr. Law, 166.)

FOLGER, J.  The plaintiff in error was indicted of the crime of burglary in the first degree, under the section of the Revised Statutes defining that crime.  (2 R. S., p. 668, § 10, subd. 1.)  The crime, as there defined, consists in breaking into, and entering in the night-time, in the manner there specified, the dwelling-house of another, in which there is at the time some human being, with the intent to commit some crime therein.  The evidence given upon the trial showed clearly enough the breaking and entering, and the criminal intent.  The questions mooted in this court are, whether it is legally proper, in an indictment for burglary of a dwelling-house, to aver the ownership of the building in a partner-

ship, and whether the proof showed that the room entered was a dwelling-house within the intent of the statute. As to the first question: The indictment averred the breaking and entering into the dwelling-house of Frederick Kohnsen and John F. Lubkin, being copartners in business under the firm-name and style of Kohnsen & Lubkin. The authorities are numerous enough and clear, that the ownership of the dwelling-house may be laid in the indictment to be in the members of a copartnership, when the facts of the case warrant it. In *Rex* v. *Athea* (R. & M. C. C. R., 329), the indictment averred the stealing in the dwelling-house of Halling and others. It appeared that Halling, Pierce & Stone carried on business on the premises in which the offense was committed. Pearce lived in the house, which was the joint property of the firm. The other partners resided elsewhere. It was held, upon a case reserved, that the dwelling-house was properly laid as that of all the partners. (See, also, *Rex* v. *Stockton & Edwards*, 2 Taunt., 339; 2 Leach, 1015; *S. C.*, *sub nom ; Rex* v. *Stock et al.*, Russ. & Ry., 185; *Rex* v. *Hawkins*, Foster's Cr. Law, 38; *Rex* v. *Jenkins*, Russ. & Ry., 244; *Saxton's Case*, 2 Harr., 533.)

The facts of the case in hand are meagrely presented upon the error-book, but we gather from it, and from the concessions made upon the points and on the oral argument, that Kohnsen & Lubkin, the persons named in the indictment, were copartners in trade; and, as such, held and occupied the buildings, into one room of which the burglarious entry was made; that the lower or first stories of the buildings were used for the purposes of their business, and opened into each other; that in the upper rooms one only of the partners and some other persons lived, and were present on the night of the burglary. This state of facts is in accord with those presented in the cases above cited. We are of opinion that the first question presented must be resolved against the plaintiff in error. The ownership of the buildings was properly laid by the indictment in Kohnsen & Lubkin. The ownership remained with them; the actual possession of the

portions of the buildings used for business was in them, and the possession of part of the portion of the buildings used to live in was in them, by the actual possession and occupation of that part by Kohnsen. They had not given such an interest to other persons in the whole or in parts of the buildings as to constitute an ownership in such other persons. (2 East., P. C. C., 15, § 18, p. 502.) The cases are somewhat in conflict upon this point, it is true, and are not easily reconciled or distinguished; see *Rex* v. *Margetts et al.* (2 Leach, 930); but it is plain that here the partners, as such, had the ultimate control and right of possession of the whole buildings, and the actual possession of the shop entered, and of the sleeping-room above it, thus bringing the case within several decisions.

As to the second question: In addition to the facts already stated, it is needed only to note that there was an internal communication between the two stores, in the lower stories of the buildings, but none between them and the upper rooms, in which one of the partners and other persons lived. The room into which the plaintiff in error broke was used for business purposes only, but it was within the same four outer walls, and under the same roof as the other rooms of the buildings. To pass from the rooms used for business purposes to the rooms used for living in, it was necessary to go out of doors into a yard fenced in, and from thence up stairs. The unlawful entering of the plaintiff in error was into one of the lower rooms used for trade, and into that only. The point made is, that as there was no internal communication from that room to the rooms used for dwellings, and as that room was not necessary for the dwelling-rooms, there was not a breaking into a dwelling-house, and hence the act was not burglary in the first degree as defined by the Revised Statutes as cited above. In considering this point, I will first say that the definition of the crime of burglary in the first degree, given by the Revised Statutes, does not, so far as this question is concerned, materially differ from the definition of the crime of burglary as given at common law, to

wit, " a breaking and entering the mansion-house of another in the night, with intent to commit some felony within the same." * * * (2 Russ. on Cr. p. 1, § *785.) It will, therefore, throw light upon this question to ascertain what buildings or rooms were, at common law, held to be dwelling-houses or a part thereof, so as to be the subject of burglary. For, so far as the Revised Statutes as already cited are concerned, what was a dwelling-house or a part thereof at common law, must also be one under those statutes. Now, at common law, before the adoption of the Revised Statutes, it had been held that it was not needful that there should be an internal communication between the room or building in which the owner dwelt, if the two rooms or buildings, were in the same inclosure, and were built close to and adjoining each other. (*Case of Gibson, Mutton & Wiggs*, Leach's Cr. Cases, 320 [case 165], recognized in *The People* v. *Parker*, 4 J. R., 423.) In the case from Leach, there was a shop built close to a dwelling-house in which the prosecutor resided. There was no internal communication between them. No person slept in the shop. The only door to it was in the court-yard before the house and shop, which yard was inclosed by a brick wall, including them within it, with a gate in the wall serving for ingress to them. The breaking and entering was into the shop. Objection was taken that it could not be considered the dwelling-house of the prosecutor, and the case was reserved for the consideration of the twelve judges. They were all of the opinion that the shop was to be considered a part of the dwelling-house, being within the same building and the same roof, though there was only one door to the shop, that from the outside, and that the prisoners had been duly convicted of burglary in a dwelling-house. The case in Johnson's Reports (*supra*), is also significant, from the facts relied upon there to distinguish it from the case in Leach (*supra*). Those facts were that the shop entered, in which no one slept, though on the same lot with the dwelling-house was twenty feet from it, not inclosed by the same fence, nor connected by a fence, and

both open to a street. The court said that they were not within the same curtilage, as there was no fence or yard inclosing both so as to bring them within one inclosure, therefore, the case was within that of *The King* v. *Garland*, 1 Leach, Cr. Cas., 130 [or 171], Case, 77. It has been urged, in the consideration of the case in hand, that though the common law did go farther than the cases above cited, and did deem all out-houses, when they were within the same inclosure as the dwelling-house, a part of it, yet that they must, to be so held, be buildings or rooms the use of which subserved a domestic purpose, and were thus essential or convenient for the enjoyment of the dwelling-house as such. *Gibson's Case* (*supra*), would alone dispose of that. The building there entered was not only of itself a shop for trade, but it was in the use and occupation of a person other than the owner of the dwelling-house. The books have many cases to the same end. *Rex* v. *Gibbons & Kew* (Russ. & Ry., 442), the case of a shop. *Robertson's Case* (4 City Hall Rec., 63), also a shop with no internal communication with the dwelling-house. *Rex* v. *Stock et al.* (Russ. & Ry., 185), a counting-room of bankers. *Ex parte Vincent* (26 Ala., 145), one room in a house used as a wareroom for goods; *Rex* v. *Witt* (Ry. & M., 248); an office for business, below lodging rooms. Indeed, the essence of the crime of burglary at common law is the midnight terror excited, and the liability created by it of danger to human life, growing out of the attempt to defend property from depredation. It is plain that both of these may arise, when the place entered is in close contiguity with the place of the owner's repose, though the former has no relation to the latter by reason of domestic use or adaptation. Besides, the cases have disregarded the fact of domestic use, necessity or convenience, and have found the criterion in the physical or legal severance of the two departments or buildings; (*Rex* v. *Jenkins*, Russ & Ry., 244; *Rex* v. *Westwood*, id., 495); where the separation of the buildings was by a narrow way, both of them being used for the same family domestic purposes. It is not to be denied that there are

some cases which do put just the difference above noted, as now urged for the plaintiff in error. (*State* v. *Langford*, 1 Dev., 253; *State* v. *Jenkins*, 5 Jones, 430; *State* v. *Bryant Ginas*, 1 Nott. & McCord, 583.) Though, in the case last cited, it is conceded that if a store is entered, which is a part of a dwelling-house, by being under the same roof the crime is committed; and it must be so, if it is the circumstance of midnight terror in breaking open a dwelling-house, which is a chief ingredient of the crime of burglary; and it is for that reason that barns and other out-houses, if in proximity to the mansion-house, are deemed *quasi* dwelling-houses, and entitled to the same protection. (*State* v. *Brooks*, 4 Conn., 446–449.) Coke (3 Inst., 64), is cited to show that only those buildings or places, which in their nature and recognized use are intended for the domestic comfort and convenience of the owner, may be the subject of burglary at common law; but in the same book and at the same page the author also says: "But a shop wherein any person doth *converse*"—*i. e.* be employed or engaged with; Richardson's Dic., *in voce*; "being a parcell of a mansion-house, or not parcell, is taken for a mansion-house." So Hale is cited (I vol. P. C., 558); and it is there said that, "to this day it is holden no burglary to break open *such a shop*." But what does he mean by that phrase? That appears from the authority which he cites (Hutton's Reps., 33); where it was held no burglary to break and enter a shop, held by one as a tenant in the house of another, in which the tenant worked by day, but neither he nor the owner slept by night. And the reason given is the one above noticed and often recognized by the cases, that by the leasing there was a severance in law of the shop from the dwelling-house. But Hale also (vol. 1, P. C., page 557), cites as law the passage from The Institutes above quoted. Other citations from text-books are made by the plaintiff in error; they will be found to the same effect, and subject to the same distinction as those from Coke & Hale. And see *Rex* v. *Gibbons et al.*, *supra; Rex* v. *Richard Carroll*, 1 Leach Cr. Cas., 272 case 115. That there must be a

dwelling-house, to which the shop, room, or other place entered belongs as a part, admits of no doubt. To this effect, and no more, are the cases cited by the plaintiff in error, of *Rex* v. *Harris* (2 Leach, 701); *Rex* v. *Davies alias Silk* (id., 876), and the like. There were cases which went further than anything I have asserted. They did not exact that the building entered should be close to or adjoining the dwelling-house, but held the crime committed, if the building entered was within the same fence or inclosure as the building slept in. And the dwelling-house in which burglary might be committed was held formerly to include out-houses — such as warehouses, barns, stables, cow-houses, dairy-houses—though not under the same roof or joining contiguous to the house, provided they were parcel thereof. (1 Russ. on Cr., *799, and authorities cited.) Any out-house within the curtilage, or same common fence with the dwelling-house itself, was considered to be parcel of it, on the ground that the capital house protected and privileged all its branches and appurtenants, if within the curtilage or home-stall. (*State* v. *Twitty*, 1 Hayw. [N. C.], 102; *State* v. *Wilson*, id., 242; see, also, *State* v. *Ginns*, 1 Nott. & McCord, 585, *supra*, where this is conceded to be the common law; see note *a* to *Garland's Case*, *supra*.

It seems clear, that at common law the shop which the plaintiff in error broke into would have been held a part of a dwelling-house.

The rules of the common law as to this crime have been affected by statutory provision in this State. At common law there were no degrees of burglary. The breaking into a dwelling-house in the night, with felonious intent, made the crime, and any building within the curtilage was deemed a dwelling-house. But the revisers thought that the offense partook of different degrees of criminality, and sought to class them according to their atrocity. They saw that when the breaking was into a building in which some one was at the time sleeping, there was, by the act, a liability to create alarm, to provoke resistance and an affray, and to endanger human life (*Rex* v. *Higgs*, 2 Cam. & Kirwan, 322); and that there

was greater recklessness and depravity in the offender. (5 Edmond's Stat., p. 544.) So they made that act burglary in the first degree, and affixed to it the severest statutory penalty, of not less than ten years imprisonment in the State prison. (2 R. S., pp. 668, 669.) And mindful of the extent to which the courts had gone, as is herein above shown, in holding an outer building a dwelling-house, they defined that word for the purposes of the Burglary act as follows: "Section 16. No building shall be deemed a dwelling-house, or any part of a dwelling-house, within the meaning of the foregoing provisions, unless the same be joined to, immediately connected with, and part of a dwelling-house." (2 R. S., p. 669, § 16.) From this it is contended that a shop or store, like that entered in this case, having no internal communication with the parts of a building used for the purpose of a dwelling-house, is not within the Burglary act a dwelling-house, or a part of one. But it is plain that in reporting this sixteenth section, the idea in the minds of the revisers was to exclude from the grade of burglary in the first degree, and from its severity of punishment, a felonious breaking into any building so removed or detached from a dwelling-house in which was some person, as that there would be no likelihood of endangering human life by the act; yet to keep within that grade any building so joined to, immediately connected with and a part of a dwelling-house, as that by the felonious act that likelihood would arise; and this must be kept in mind in construing that sixteenth section. There is another thing to be noticed. The word they used in the sixteenth section is "*building*." "No *building* shall be deemed a dwelling-house, * * * unless," etc. Evidently they meant a structure which, of itself, was a building, so as to stand and subsist, separate and independent, from the other structure, which is the dwelling-house of the owner. They meant to exclude uninhabited out-houses, isolated from the inhabited dwelling-house and forming no part thereof, and having no junction or connection therewith. They have given us a key to the meaning of the word

building as thus used by them. In their note upon this six-teenth section (5 Edmond's Stat., 545), they refer to the Arson Act for a provision to the same purport. (2 R. S., 661, § 10.) This is their language: " The same description is in arson of the first degree," section 11, title 1. Turning to that section eleven, which, as enacted, became section ten, just above cited, we find it thus: " But no barn, shed, or other out-house shall be deemed a dwelling-house, or part of a dwell-ing-house, within the meaning of the last section, unless the same be joined to, immediately connected with, and part of a dwelling-house." It is plain that the word " building " in the sixteenth section (in the Burglary act) means any barn, shed, or other out-house, and it is proper, in construing that section, to substitute those words for that word; when that is done, it is also plain that the sixteenth section has no application to a room in a building used as a dwelling, within the same outer walls, beneath the same roof. The Arson Act has such a likness to the Burglary act that a decision upon a like point under the former act will be applicable to the case in hand. In *The People* v. *Orcutt* (1 Parker R., 252), the Oneida Oyer and Terminer charged the jury, "that it was not necessary that the whole building should be occu-pied usually by persons lodging therein at night; if a part of it was occupied as a sleeping-room it was sufficient." In that case the building set fire to and the one used to sleep in had lofts opening into each other, but that fact is not dwelt upon by the court. And consonant with that is *Rex* v. *Winters* (Russ. & Ry., 295), which was the burning of a school-house, under the same roof as the dwelling-house, but practically separated therefrom by a narrow way. It was held that it was both an out-house and a part of the dwell-ing-house, there being two counts in the indictment which respectively so alleged. It is manifest that the revisers and the Legislature meant to exclude from the grade of burglary in the first degree, and from the severity of the punishment therefor, an entry into a structure, within the same inclosure as the dwelling-house, but not so

connected with it as that an entrance into the former by force would be likely to rouse one sleeping in the latter. They did not mean a room, or part of the same structure with the dwelling-house, within the same four outer walls, and beneath the same roof, though there was no internal communication between the room entered and the room of the sleeper. It is plain that a violent entry into such a room would be likely to rouse the occupant of the sleeping-room, and draw him forth to an encounter, and liability to death or injury, in defense of his goods. I do not find any adjudication in this State upon this sixteenth section. In England there are cases upon analogous statutes. There the severity of the common law has also caused enactments (7 and 8 Geo. 4, ch. 29, § 13; 24 and 25 Vict., ch. 96, § 53); which declare, in substance, that the building entered must be a part of the dwelling-house, and that it is not to be so deemed unless there shall be a communication between such building and the dwelling-house, either immediate, or by means of a covered and inclosed passage leading from one to the other. It will be observed that these statutes are much more particular in requiring a communication than is section sixteen of the Revised Statutes above quoted. *Rex* v. *Burrows* (1830), (1 Mood. C. C., 274), is one adjudication construing this provision, where the prisoner on an indictment for burglariously entering a dwelling, was proved to have entered a washhouse which had no internal communication with any part of the dwelling-house, as the door of the wash-house opened into a back-yard. But it was under the same roof. It was held by seven judges against five that the wash-house was a part of the dwelling-house. In *Somerville's Case* (1834), 2 Lew., 113; *Rex* v. *Higgs* (*supra*), (1846); *Rex* v. *Turner* (1834), 6 Carr. & C., 407; *Rex* v. *Westwood* (1822), Russ. & Ry., 495; *Eggington's Case*, 2 East P. C., 494, it was held that the building entered was not a dwelling-house, or a part of one; but in each of these cases it is mentioned as one of the facts which led to that conclusion, that the building or room entered was not under the same roof with the

building or room occupied for sleeping in. I find no decision, that where the room or building entered, was under the same roof and within the same four walls, it was not held to be a part of the dwelling-house within the statutory or common-law definition of burglary.

From this discussion it appears that the act of the plaintiff in error, in breaking into the store in the night-time with felonious intent, a part as it was of a whole building in other parts of which there were persons dwelling and sleeping at the time, though there was no internal communication between the store and their rooms, was an act of recklessness and depravity, likely to cause alarm and to lead to personal violence and so endanger human life. It also appears that the revisers and the Legislature, in the defining and restrictive section quoted (§ 16 of the Burglary act), did not mean to say that one room in a whole building, within the same outer walls and under the same roof as the whole building, must be also connected with the rest of the building by an internal, inclosed or covered communication, to make it a part of that building, and to make it a part of a dwelling-house within the definition of burglary in the first degree given by them, if any part of the building was occupied for the purposes of a dwelling-house.

I am brought to the conclusion that upon the facts proven, the plaintiff in error was properly indicted and convicted of the statutory crime of burglary in the first degree.

The judgment brought up for review should be affirmed.

It may ward off misapprehension if it is said, that if different stores in a large building, some parts of which are used for sleeping apartments, are rented to different persons for purposes of trade or commerce, or mechanical pursuit, or manufacturing, another rule comes in. For illustration, let there be mentioned the Astor House in New York city. The rule is, that a part of a dwelling-house may be so severed from the rest of it, by being let to a tenant, as to be no longer a place in which burglary in the first degree can be committed; if there be no internal communication, and the tenant

does not sleep in it. Then it is not parcel of the dwelling-house of the owner, for he has no occupation or possession of it; nor is it a dwelling-house of the tenant, for he does not lodge there. (1 Hale P. C., 557, 558; Kel., 83, 84; 4 Black. Com., 225, 226; East P. C. C., 15, § 20, p. 507.)

ALLEN, MILLER and EARL, JJ., concur; RAPALLO and ANDREWS, JJ., dissent; CHURCH, Ch. J., not voting.

Judgment affirmed.