(January 13, 2015)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RONEL JOSEPH, Appellant. [1 NYS3d 63]—

Judgment, Supreme Court, New York County (Laura A. Ward, J.), rendered January 13, 2011, as amended February 3, 2011 and February 22, 2011, convicting defendant, after a jury trial, of burglary in the second and third degrees, attempted escape in the second degree and resisting arrest, and sentencing him, as a second violent felony offender, to an aggregate term of seven years, affirmed.

While monitoring a surveillance camera, a store employee observed defendant entering the two open sidewalk doors leading to the store's basement and pacing back and forth in the basement with what appeared to be a flashlight. The store was located on the first floor of a seven-floor building, and all of the six floors above it consisted of residential apartments. The basement was accessible only through the sidewalk doors located outside the store, and there was no direct access from the basement to any part of the residential portion of the building, or to the store itself.

After observing defendant, the employee went outside and locked the sidewalk doors, trapping defendant in the basement. Police arrived and, after reviewing the surveillance tape, asked the employee to unlock the doors. The officers then asked defendant to climb out of the basement, and arrested him. As an officer attempted to put defendant into a patrol car he bolted, saying, "I'm not going to jail." After a struggle with the pursuing officer, defendant was subdued. At trial, the defense was that defendant entered the basement to retrieve his cell phone after he dropped it through the open sidewalk doors.

The verdict was based on legally sufficient evidence and was not against the weight of the evidence (see People v Danielson, 9 NY3d 342, 348-349 [2007]). There is no basis for disturbing the jury's credibility determinations. Defendant was properly convicted of second-degree burglary, which requires entry into a dwelling (Penal Law § 140.25 [2]), based on his entry into the basement of the store located on the ground floor of a small apartment building (see People v McCray, 23 NY3d 621 [2014]).

In McCray, the Court of Appeals reaffirmed the rule, established in Quinn v People (71 NY 561 [1878]), that "if a building contains a dwelling, a burglary committed in any part of that building is the burglary of a dwelling; but an exception exists where the building is large and the crime is committed in a place so remote and inaccessible from the living quarters that the special dangers inherent in the burglary of a dwelling do not exist" (McCray, 23 NY3d at 624). Although the inaccessibility requirement appears to have been met, the other condition

for application of the exception—namely, that the building in question be "large"—has not.

Stating that the decision in *McCray* did not turn on the size of the building, and that the critical factor is whether there is close contiguity between the residential and nonresidential elements of the building such that the residents of the building would be aware of the burglar's presence, the dissent would reverse the conviction for second-degree burglary because the basement was entirely sealed off and inaccessible from the residences above. However, in *Quinn*, which is the foundation on which *McCray* stands, there also was no "internal communication" between the shop that was broken into and the living quarters above, and a person had to go into the yard and then up stairs to get from one to another (*Quinn* at 565). Nevertheless, the Court of Appeals affirmed the conviction of first-degree burglary because the shop "was within the same four outer walls, and under the same roof" (*id.*). The Court reasoned that "the essence of the crime of burglary at common law is the midnight terror excited, and the liability created by it of danger to human life, growing out of the attempt to defend property from depredation. It is plain that both of these may arise, when the place entered is in close contiguity with the place of the owner's repose, though the former has no relation to the latter by reason of domestic use or adaptation" (*id.* at 567).

In reaffirming the holding in *Quinn*, the Court of Appeals in *McCray* stated: "These words from almost a century and a half ago are still apt as an explanation of why burglary of a dwelling is a more serious crime than other burglaries: an intrusion into a home, or an overnight lodging, is both more frightening and more likely to end in violence. And it remains true today, as it was in 1878, that these dangers are created in significant degree when the crime is committed 'in close contiguity' with a 'place of repose' *even though the place of the burglary and the sleeping quarters are not instantly accessible to each other*. When a store owner in his bedroom becomes conscious that there is a burglary in the shop downstairs, or when a hotel guest hears a burglar in the coffee shop across the hall from her room, the special dangers that accompany the burglary of a dwelling are sufficiently present to justify treating the crime as a more serious one than burglary of a building where no one lives" (23 NY3d at 627 [emphasis added]).

Furthermore, in addressing the legislative history of the burglary statutes as it related to *Quinn,* the Court observed that "[w]e interpret the remedy adopted by the 1967 Legislature as reviving *Quinn*'s holding that, in general, burglary of a partly

residential building is burglary of a dwelling, even if the burglar enters only the nonresidential part. But we do not interpret it as removing the limitation that the *Quinn* court placed on its own holding: *In large buildings*, situations can arise in which the general rule will not be applied because it does not make sense. That was the law in 1878 and is the law today" (23 NY3d at 629 [emphasis added]).

The apartment building in this case cannot be characterized as "large" within the meaning of *McCray*. With the residential dwellings located immediately above the store, it cannot be said that there was "virtually no risk" that the people living in the apartments would not "even be conscious" of the presence of a burglar who entered the basement through the sidewalk doors (23 NY3d at 627). Thus, as in *Quinn*, the scenario before us falls within the general rule, not the exception.

Defendant also challenges the sufficiency and weight of the evidence supporting both of his burglary convictions with respect to the element of intent. However, the evidence supports the conclusion that defendant entered the basement with the intent to commit a crime. The jury reasonably rejected defendant's implausible explanation for his behavior. Concur—Sweeny, J.P., Renwick, Andrias and Moskowitz, JJ.

Manzanet-Daniels, J., dissents in part in a memorandum as follows: I would reverse the conviction for second degree burglary.

The Court of Appeals stated, long ago, in *Quinn v People* (71 NY 561 [1878]), and recently reaffirmed the principle in *People v McCray* (23 NY3d 621 [2014]), that where part of a building with residences is "rented to different persons for purposes of trade or commerce," that "part of a dwelling-house may be so severed from the rest of it" as to not qualify as a "dwelling" within the meaning of the burglary statute (*Quinn*, 71 NY at 573). The Court recognized that the purpose for the increased penalty for burglary of a dwelling is to prevent "midnight terror . . . [and the] danger to human life, growing out of the attempt to defend property from depredation" (*id*. at 567).

In *McCray*, the Court of Appeals reaffirmed the "common sense limitation on a literal reading of [the] statute" regarding dwellings, rejecting the prosecution's argument for a strict, literal application of the statute that would have permitted no exceptions (23 NY3d at 628). The Court underscored that where a "crime is committed in a place so remote and inaccessible from the living quarters . . . the special dangers inherent in the burglary of a dwelling do not exist" (*id*. at 624).

In this case, the evidence showed that the basement was

entirely sealed off and inaccessible from the residences above. As the trial court found, "there was no testimony that you could get to the apartments" internally from the basement of the delicatessen. Moreover, there was no testimony that a burglar could access any part of the building from the basement—it was entirely shut off and accessible only via the double doors to the public sidewalk. The basement was the quintessence of "inaccessible," given that it was cut off from the building itself, and accessible only via the public sidewalk. Indeed, the delicatessen workers locked defendant into the vault-like basement while they called the police.

The majority agrees that the inaccessibility requirement has been met in this case, yet nonetheless affirms, reasoning that the Court of Appeals in *McCray* imposed an additional requirement that the building in question be "large" in order to constitute a dwelling.

In my view, there is no support for such an interpretation of "dwelling," either in *Quinn* or in *McCray* itself. *Quinn* and *McCray* did not turn on this distinction; rather, the critical factor was whether there was close contiguity between the residential and nonresidential elements of the building. While a building's size may inform the determination as to whether the residential elements were accessible, size per se is not a dispositive factor. The critical factor is whether "the people living in the apartments will even be conscious of [the burglar's] presence"; if not, "[s]uch a burglar should be convicted only of third degree, not second degree, burglary" (*McCray*, 23 NY3d at 627). Notably, the Court's analysis of whether the defendant in *McCray* committed second degree burglary by burglarizing a locker room and Madame Tussaud's Wax Museum, both located within the same hotel complex, focused on the contiguity of those places to the floors containing the guest rooms. The burglary of the locker room easily qualified because the defendant entered and exited the locker room via stairwells which provided a means of reaching the guest floors of the hotel. The Court found that the burglary of the wax museum qualified, though "just barely," because the jury could find that the defendant entered and exited the wax museum via the same stairwell, granting the burglar "ease of access" (23 NY3d at 630). Notably, the Court stated "we might well hold that a burglar who entered Madame Tussaud's from the street, and never entered the stairwell it shared with the hotel, committed only third degree burglary" (*id.*).

While, as the majority notes, there was no internal communication between the ground-floor shop and the upper floor

apartments in the building in *Quinn*, there was, however, an external staircase that permitted access to the upper floors. Here, the burglar was trapped inside a basement vault, which was not connected in any way, internally or externally, with the upper elements of the building. I believe this distinction is an important one in classifying this case within the exception outlined in *McCray*. I would also note that what constitutes a large building in today's era is different from whatever would have been considered a large building in 1878, when *Quinn* was decided.

Consistent with the Court of Appeals' admonition that a conviction for burglary of a dwelling is not authorized where "the burglar neither comes nor readily can come near to anyone's living quarters" (*McCray*, 23 NY3d at 628), I would reverse. I would in any event urge the Court to clarify whether the size of the building is a necessary criterion in making the determination as to whether a building constitutes a "dwelling."