=================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
-----------------------------------------------------------------
No. 154
The People &c.,
          Respondent,
        v.
Ronel Joseph,
          Appellant.


          Eunice C. Lee, for appellant.
          Diane N. Princ, for respondent.


MEMORANDUM:

          The order of the Appellate Division should be modified

by vacating the conviction on the count of burglary in the second

degree, dismissing that count in the indictment, and remitting to

Supreme Court for resentencing, and as so modified, affirmed.

          On the evening of June 28, 2010, defendant entered the

basement of the Greenleaf Deli in Manhattan.  The deli was

- 1 -

located on the ground floor of a seven-story building, with six floors of residential apartments above it. The basement, which was only accessible through two cellar doors located on the public sidewalk adjacent to the deli, was used to store deli merchandise. There was no access from the basement to any part of the residential units of the building, or to the deli itself. The apartment residents did not have access to the basement and only deli employees were permitted to enter the basement. An employee observed defendant on the deli's surveillance monitor enter the open doors to the deli basement and walk around the basement with a flashlight. The employee went outside, closed and locked the basement doors and called 911. The police arrived, asked defendant to climb out of the basement, and, after a struggle, arrested him.

Defendant was charged, by indictment, with one count each of burglary in the second degree (Penal Law § 140.25 [2]), burglary in the third degree (Penal Law § 140.20), resisting arrest (Penal Law § 205.30) and attempted escape in the second degree (Penal Law §§ 110; 205.10 [2]). At trial, at the close of the People's case, and again after defendant testified, defense counsel moved to dismiss the burglary charges, arguing, among other things, that the deli basement was not a "dwelling" for purposes of second degree burglary because there was no testimony that one could get into the building or into the deli from the basement. The trial court denied the motions. A jury convicted

defendant on all charges.  He was sentenced as a second violent

felony offender to an aggregate prison term of seven years to be

followed by five years of postrelease supervision.

A majority of the Appellate Division affirmed,

rejecting defendant's argument that his conviction for second

degree burglary should be vacated (124 AD3d 437 [2015]).  The

majority relied on this Court's decision in People v McCray (23

NY3d 621 [2014]), where we reaffirmed the common law rule

established in Quinn v People (71 NY 561 [1878]):

> "[I]f a building contains a dwelling, a
> burglary committed in any part of that
> building is the burglary of a dwelling; but
> an exception exists where the building is
> large and the crime is committed in a place
> so remote and inaccessible from the living
> quarters that the special dangers inherent in
> the burglary of a dwelling do not exist (23
> NY3d at 625).

The majority rejected defendant's argument that the exception to

the general rule applied, reasoning that although the

inaccessibility requirement appeared to have been met, the

exception was inapplicable because the building was not large.

The dissent concluded that the exception applied and that there

had not been a burglary of a dwelling because the basement was

"entirely sealed off and inaccessible from the residences above"

(124 AD3d at 440-441).  The dissent disagreed with the majority

that the exception recognized in McCray only applied to "large"

buildings, and instead, concluded that, "[w]hile a building's

size may inform the determination as to whether the residential

elements were accessible, size per se is not a dispositive factor"(id. at 441).

Burglary in the third degree is committed when a person "knowingly enters or remains unlawfully in a building with intent to commit a crime therein" (Penal Law § 140.20).  Penal Law § 140.25 (2) elevates third degree burglary to second degree burglary when "[t]he building is a dwelling."  A dwelling is "a building which is usually occupied by a person lodging therein at night" (Penal Law § 140.00 [3]).  "Where a building consists of two or more units separately secured or occupied, each unit shall be deemed both a separate building in itself and a part of the main building" (Penal Law § 140.00 [2]).  This Court explained in People v Quattlebaum (91 NY2d 744 [1998]), that the increased penalty for burglary of a dwelling was designed to prevent "midnight terror" and the "danger to human life, growing out of the attempt to defend property from depredation" (91 NY2d at 747, quoting Quinn).  Of note, in 1981, the legislature eliminated any nighttime element for burglary of a dwelling (L 1981, ch 361).  In McCray, this Court pointed out that "a burglary of a dwelling is a more serious crime than other burglaries [because] an intrusion into a home or an overnight lodging, is both more frightening and more likely to end in violence" (id. at 627).  "[T]hese dangers are created in significant degree when the crime is committed 'in close contiguity' with a 'place of repose' even though the place of the burglary and the sleeping quarters are

not instantly accessible to each other" (id. at 627, quoting Quinn).  But this Court observed in McCray that the legislature had not authorized "a conviction for burglary of a dwelling where the burglar neither comes nor readily can come near to anyone's living quarters" (McCray at 628).  In this case, given the isolation of the basement itself from the rest of the building, as well as the noncontiguous relationship of the basement to the residential units of the building, defendant did not come, nor could he have readily come near to the residences.

In McCray, where the burglaries had occurred in a hotel and connected museum, we noted that in large buildings, situations can arise in which applying the general rule -- that burglary of a partly residential building is burglary of a dwelling even if the burglar enters only the nonresidential part -- does not make sense.  However, contrary to the People's argument, McCray did not impose a requirement that a building must be "large" in order for the exception to apply.  The size of the building may be a factor when considering whether the residential units of the building are remote and inaccessible, but a building being a "large" size, especially given the subjective nature of the word "large," is not a dispositive factor.

Under the narrow circumstances of this case, application of the general rule as to what constitutes a dwelling in a mixed residential and commercial building within the meaning

of Penal Law § 140.00 (2) is not warranted.  Defendant, from a
public sidewalk, entered the open cellar doors into a basement
that was both entirely disconnected from the building and
completely inaccessible to the residences in that building.  The
basement was not contiguous to any residential units.  Notably,
in Quinn, where this Court upheld the burglary conviction
although there was no internal access between the shop which the
burglar entered and the living quarters in the building, there
was a yard accessible from the shop, and the living quarters
could be reached by going into the yard and then up stairs (71 NY
at 565).  Thus, although there was no "internal communication"
(id. at 573) between the store and the living quarters, Quinn's
act of breaking into the store was "likely to cause alarm and to
lead to personal violence and so endanger human life" (id.).  In
contrast, here, the deli basement was both inaccessible to, and
remote from, the residential apartments.  It was inaccessible
because defendant could not go anywhere into the building from
the basement.  He could not reach the deli or the apartments.
All that he could reach from the basement was the public
sidewalk.  The basement was remote given that it was not used by
the residents for any purposes and that there was no proof of any
relationship between that space and the residents.  In sum, there
was no "close contiguity" (Quinn at 567) between the basement and
the dwellings.  Under these facts, "the special dangers inherent
in the burglary of a dwelling do not exist" (McCray at 624).

Upon consideration of the evidence in this case, we conclude that the evidence was legally insufficient to support defendant's conviction of burglary in the second degree. Defendant's further contention that the evidence was legally insufficient to support his conviction for burglary in the third degree is without merit.

People v Ronel Joseph

No. 154

STEIN, J.(dissenting):

I would affirm defendant's conviction for burglary in the second degree. The basement that defendant illegally entered was part of a dwelling and, although the residential portions of the building were inaccessible from the basement, they were not remote. Thus, the judicially-created exception to Penal Law § 140.00 (2) is inapplicable here, and the statutory definition of a dwelling should prevail.

A person commits burglary in the second degree when he or she "knowingly enters or remains unlawfully in a building with intent to commit a crime therein" and "[t]he building is a dwelling" (Penal Law § 140.25 [2]). The principal element in dispute in the instant case is whether the basement at issue is a dwelling.[1] The statute defines a dwelling as "a building which is usually occupied by a person lodging therein at night" (Penal Law § 140.00 [3]). The statute also provides that "[w]here a building consists of two or more units separately secured or occupied, each unit shall be deemed both a separate building in

_____

[1] Defendant also argues that the People failed to prove his intent to commit a crime in the basement, but that argument is unpersuasive (see People v Samuels, 99 NY2d 20, 24 [2002]; People v Cabey, 85 NY2d 417, 421-422 [1995]).

- 1 -

itself and a part of the main building" (Penal Law § 140.00 [2]). As noted by the majority, the building at issue here contains a basement, a deli on the first floor, and six floors of separately-occupied residential apartments above the deli.  The apartments are clearly dwellings.  Therefore, strictly applying the statute to the facts here, every part of the building -- including the basement -- is considered part of a dwelling (see Penal Law § 140.00 [2], [3]).

In 1878, this Court explained that the statutory definition of a dwelling, as related to the crime of burglary, differed from the common-law definition because the statute did not include out-buildings such as barns within the meaning of dwelling, even if they were enclosed within the same fenced yard as a residence (see Quinn v People, 71 NY 561, 570-572 [1878]). However, the statutory definition of a dwelling included all rooms "under the same roof and within the same four walls" as sleeping quarters, even if those other rooms were used for business purposes (id. at 573).  When interpreting the burglary statute, we divined the legislature's intent to include such rooms as part of a dwelling -- even if there was no internal connection to the residential portion of the building -- as being premised on the likelihood that breaking into any part of the same structure may be likely to "rouse the occupant of the sleeping-room, and draw him forth to an encounter, and liability to death or injury, in defense of his goods" (id. at 572).  Thus,

we explained that the

> "essence of the crime of burglary at common
> law is the midnight terror excited, and the
> liability created by it of danger to human
> life, growing out of the attempt to defend
> property from depredation.  It is plain that
> both of these may arise, when the place
> entered is in close contiguity with the place
> of the owner's repose, though the former has
> no relation to the latter by reason of
> domestic use or adaptation" (id. at 567).

Under the facts of Quinn, breaking into a shop on the first floor of a building constituted burglary of a dwelling because the second floor contained sleeping quarters, even though there was no internal communication between the two floors and the occupants of the second floor had to go outside, descend an external staircase, and enter an exterior door to reach the first floor shop.  Although we found burglary of a dwelling in that case, in an effort to "ward off misapprehension" or a fear that the statutory definition could be applied too broadly, the Court acknowledged that there may be situations in which, for purposes of the crime of burglary, the residential portion of a building that also contained multiple businesses may be deemed severed from the business portion due to the large size of the building and the lack of any internal connection between the living quarters and the businesses (see id. at 573).

This Court did not have occasion to address this judicially-created exception for the next 136 years.  However, two years ago, in People v McCray (23 NY3d 621 [2014]), we reaffirmed both the general rule and the exception established in

Quinn, holding that:

> "Generally, if a building contains a
> dwelling, a burglary committed in any part of
> that building is the burglary of a dwelling;
> but an exception exists where the building is
> large and the crime is committed in a place
> so remote and inaccessible from the living
> quarters that the special dangers inherent in
> the burglary of a dwelling do not exist"
> (McCray, 23 NY3d at 624).

Despite the passage of many years since our decision in Quinn, we reiterated in McCray the enduring purpose of treating burglary of a dwelling as a more serious crime, specifically that "an intrusion into a home . . . is both more frightening and more likely to end in violence" (id. at 627; see People v Barney, 99 NY2d 367, 370 [2003]).  We further noted that "these dangers are created in significant degree when the crime is committed 'in close contiguity' with a 'place of repose' even though the place of the burglary and the sleeping quarters are not instantly accessible to each other" (McCray, 23 NY3d at 627).  As an example, we described a store owner in his bedroom becoming aware of a burglar in the shop downstairs as a situation raising the special dangers inherent in the burglary of a dwelling that justify treating the crime as more serious than the burglary of a building in which no one lives (see id.).

In McCray, we also accepted the continued viability of the exception created in Quinn, which placed a "common sense limitation on a literal reading of a statute" for buildings where "applying the four walls and a roof rule would stretch the

statute beyond its purpose" (id. at 628).  To illustrate the
exception, we asked the reader to "imagine a skyscraper"
containing mainly stores and offices, "with a few apartments
remote and inaccessible from the commercial space" (id. at 627
[emphasis added]).  We recognized that, in such a situation,
breaking into one of the commercial spaces may create virtually
no risk that the apartment residents would even be conscious of
the burglar's presence, such that the purposes of the statute
would not be served and its application would be unfair (see
id.).

The actual building at issue in McCray was a large,
modern Manhattan building containing numerous businesses,
including Madame Tussaud's Wax Museum and a Hilton Hotel.
Because the hotel constituted a dwelling, we concluded that the
defendant could be guilty of two counts of burglarizing a
dwelling where he broke into a locker room for hotel employees,
and into the museum.  We reasoned that, even though these areas
were several floors away from guest rooms where people slept, an
internal stairwell provided access between the floors on which
the guest rooms, the locker room, and the museum were located
(see id. at 630).  Significantly, to reach the locker room, the
burglar had entered the stairwell by passing through the 16th
floor, which was adjacent to the 17th floor where guest rooms
were located.  We had "little hesitation in concluding that the
risks inherent in burglary of a dwelling -- the 'night terror'

and the danger of violence that we spoke of in <u>Quinn</u> -- are present when a burglar comes this near to rooms in which people are sleeping" (<u>id.</u>).  Although it was a closer call on the burglary of the museum, which was much farther from the guest rooms, we found that it constituted burglary of a dwelling because the burglar likely gained access through the aforementioned stairwell (<u>see</u> <u>id.</u>).  Though the floors of the museum that the defendant entered were not physically close to the hotel's guest rooms, we noted that proximity and ease of access were "at least equally important" factors (<u>id.</u>).  Thus, this Court clearly stated that, for the exception to apply, the burglarized portion of the building must be both remote and inaccessible to the sleeping quarters (<u>see</u> <u>id.</u> at 624, 630).

Despite use of the word "large" in both <u>Quinn</u> and <u>McCray</u> to describe buildings subject to the exception, I agree with the majority that a building's size, per se, is not dispositive but, instead, constitutes a factor to consider when determining whether the residential portion of the building is so remote and inaccessible as to eliminate the dangers inherent in burglaries of dwellings.  However, I cannot agree with the majority's conclusion that applying the general rule is unwarranted here, such that the exception applies and the basement cannot be considered a dwelling under <u>Quinn</u> and <u>McCray</u>.

In my view, the majority errs in overlooking the fact that what our cases call "the general rule" is based on a literal

reading of the statute itself.  As a result, the majority too broadly applies an exception that this Court created; such an exception should be narrowly applied because it circumvents the plain language used by the legislature (see e.g. Matter of Gomez v Stout, 13 NY3d 182, 187 [2009]; Solow Mgt. Corp. v Tanger, 10 NY3d 326, 330-331 [2008]).  Although the exception to the statutory language was judicially created many years ago, this Court has only addressed it twice (including the case in which it was created).  Both times, we found that it was inapplicable. Until today, neither this Court nor any other appellate court in this state has ever found that the exception to the statute applied to the facts of any particular case presented to it.

As noted, McCray made clear that the exception requires the burglarized portion of the building to be both "remote and inaccessible" to the residential portion (McCray, 23 NY3d at 624 [emphasis added]).  Indeed, we stated that proximity and ease of access were each important factors (see id. at 630).  In McCray, we did not apply the exception because, although the sleeping quarters were fairly remote from the museum, they were accessible by a common stairwell (see id.).  We did not apply the exception in Quinn because the living quarters were inaccessible due to the lack of an internal connection, but they were one floor above the burglarized shop, rendering them not remote (see Quinn, 71 NY at 565).  Hence, in each case in which we have considered the exception, we declined to apply it where only one of the two

criteria was present.

Here, it is undisputed that the apartments are not directly accessible from the basement.  The point of contention is the remoteness factor.  The criteria of remoteness addresses distance or proximity (see Black's Law Dictionary 1487 [10th ed 2014], remote ["[f]ar removed or separated in time, space, or relation"]).  The majority concludes that the basement was remote because the residents do not use it and have no "relationship" to that area (majority op at 6).  That conclusion conflates remoteness with inaccessibility and fails to separately consider the remoteness or proximity of the two portions of the building, as required by our precedent.  It also relies on the use to which the nonresidential area is put, which is not a factor in itself and is distinct from the question of remoteness.

Though lacking accessibility, the basement is not remote from the apartments.  The basement is a mere two stories below the nearest apartment.  In each of our prior cases, we found that a distance of one story was not remote (see McCray, 23 NY3d at 630; Quinn, 71 NY at 565-566, 573).  We have never held that direct contiguity is required to preclude remoteness, and I cannot conclude that one additional story tips the balance.  Moreover, the entrance doors to the basement are on the street level, just one story below the nearest apartment.  A tenant in a second-floor apartment could easily experience "night terror" if he or she became aware that someone was breaking into or

burglarizing the basement just a short distance below.  That situation is similar to our example in <u>McCray</u> of a hotel guest hearing a burglar in a coffee shop across the hall (<u>see</u> <u>McCray</u>, 23 NY3d at 627).  Likewise, if the occupant of a second-floor apartment was the owner of the deli here -- similar to the example in <u>McCray</u> of a shop owner/tenant -- that person might be likely to confront the burglar to protect his or her property, creating the possibility of violence and danger to human life which the statute was designed to deter (<u>see</u> <u>id.</u> at 627; <u>see</u> <u>also</u> <u>Barney</u>, 99 NY2d at 370; <u>Quinn</u>, 71 NY at 567, 572).

The majority is not only applying the exception for the first time, but it is doing so in a factual situation that -- despite the majority's claim that its holding is limited to the "narrow circumstances of this case" (majority op at 6) -- invites the broad application of the exception to numerous ordinary buildings, that is, buildings with a commercial space on the ground floor, storage in a basement beneath the business, and residential units in the upper stories.  The building here consists of eight stories (including the basement), of which six contain apartments.  That means that approximately 75% of the building is residential.  This is a far cry from the example we imagined in <u>McCray</u>, which consisted of a mainly commercial skyscraper containing a few apartments a great distance from the building's stores and offices (<u>see</u> <u>McCray</u>, 23 NY3d at 627).

Application of the general rule here is consistent with

the purpose of the statute, and the majority's holding constitutes an unreasonable expansion of the exception to that rule.  Rather than limiting the exception to cases in which "applying the four walls and a roof rule would stretch the statute beyond its purpose" (id. at 628), the majority's application of the judicially-created exception here has stretched the exception beyond its limits, causing it to swallow the general rule as set forth by the legislature in the statute. Because the basement in this primarily-residential building was not so remote from the living quarters as to eliminate the special dangers inherent in the burglary of a dwelling, I would affirm defendant's conviction of burglary in the second degree.

*    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

Order modified by vacating the conviction on the count of burglary in the second degree, dismissing that count in the indictment, and remitting to Supreme Court, New York County, for resentencing, and, as so modified, affirmed, in a memorandum. Chief Judge DiFiore and Judges Pigott, Rivera, Abdus-Salaam, Fahey and Garcia concur.  Judge Stein dissents and votes to affirm, in an opinion.


Decided October 25, 2016