Stein, J.
(dissenting). I would affirm defendant’s conviction for burglary in the second degree. The basement that defendant illegally entered was part of a dwelling and, although the residential portions of the building were inaccessible from the basement, they were not remote. Thus, the judicially-created exception to Penal Law § 140.00 (2) is inapplicable here, and the statutory definition of a dwelling should prevail.
A person commits burglary in the second degree when he or she “knowingly enters or remains unlawfully in a building with intent to commit a crime therein” and “[t]he building is a dwelling” (Penal Law § 140.25 [2]). The principal element in dispute in the instant case is whether the basement at issue is a dwelling.* The statute defines a dwelling as “a building which is usually occupied by a person lodging therein at night” (Penal Law § 140.00 [3]). The statute also provides that “[w]here a *1008 building consists of two or more units separately secured or occupied, each unit shall be deemed both a separate building in itself and a part of the main building” (Penal Law § 140.00 [2]). As noted by the majority, the building at issue here contains a basement, a deli on the first floor, and six floors of separately-occupied residential apartments above the deli. The apartments are clearly dwellings. Therefore, strictly applying the statute to the facts here, every part of the building—including the basement—is considered part of a dwelling (see Penal Law § 140.00 [2], [3]).
In 1878, this Court explained that the statutory definition of a dwelling, as related to the crime of burglary, differed from the common-law definition because the statute did not include outbuildings such as barns within the meaning of dwelling, even if they were enclosed within the same fenced yard as a residence (see Quinn v People, 71 NY 561, 570-572 [1878]). However, the statutory definition of a dwelling included all rooms “under the same roof and within the same four walls” as sleeping quarters, even if those other rooms were used for business purposes (id. at 573). When interpreting the burglary statute, we divined the legislature’s intent to include such-rooms as part of a dwelling—even if there was no internal connection to the residential portion of the building—as being premised on the likelihood that breaking into any part of the same structure may be likely to “rouse the occupant of the sleeping-room, and draw him forth to an encounter, and liability to death or injury, in defense of his goods” (id. at 572). Thus, we explained that the
“essence of the crime of burglary at common law is the midnight terror excited, and the liability created by it of danger to human life, growing out of the attempt to defend property from depredation. It is plain that both of these may arise, when the place entered is in close contiguity with the place of the owner’s repose, though the former has no relation to the latter by reason of domestic use or adaptation” (id. at 567).
Under the facts of Quinn, breaking into a shop on the first floor of a building constituted burglary of a dwelling because the second floor contained sleeping quarters, even though there was no internal communication between the two floors and the occupants of the second floor had to go outside, descend an external staircase, and enter an exterior door to reach the first *1009 floor shop. Although we found burglary of a dwelling in that case, in an effort to “ward off misapprehension” or a fear that the statutory definition could be applied too broadly, the Court acknowledged that there may be situations in which, for purposes of the crime of burglary, the residential portion of a building that also contained multiple businesses may be deemed severed from the business portion due to the large size of the building and the lack of any internal connection between the living quarters and the businesses (see id. at 573).
This Court did not have occasion to address this judicially-created exception for the next 136 years. However, two years ago, in People v McCray (23 NY3d 621 [2014]), we reaffirmed both the general rule and the exception established in Quinn, holding that
“[generally, if a building contains a dwelling, a burglary committed in any part of that building is the burglary of a dwelling; but an exception exists where the building is large and the crime is committed in a place so remote and inaccessible from the living quarters that the special dangers inherent in the burglary of a dwelling do not exist” (McCray, 23 NY3d at 624).
Despite the passage of many years since our decision in Quinn, we reiterated in McCray the enduring purpose of treating burglary of a dwelling as a more serious crime, specifically that “an intrusion into a home ... is both more frightening and more likely to end in violence” (id. at 627; see People v Barney, 99 NY2d 367, 370 [2003]). We further noted that “these dangers are created in significant degree when the crime is committed ‘in close contiguity’ with a ‘place of repose’ even though the place of the burglary and the sleeping quarters are not instantly accessible to each other” (McCray, 23 NY3d at 627). As an example, we described a store owner in his bedroom becoming aware of a burglar in the shop downstairs as a situation raising the special dangers inherent in the burglary of a dwelling that justify treating the crime as more serious than the burglary of a building in which no one lives (see id.).
In McCray, we also accepted the continued viability of the exception created in Quinn, which placed a “common sense limitation on a literal reading of a statute” for buildings where “applying the four walls and a roof rule would stretch the statute beyond its purpose” {id. at 628). To illustrate the exception, we asked the reader to “imagine a skyscraper” containing *1010 mainly stores and offices, “with a few apartments remote and inaccessible from the commercial space” (id. at 627 [emphasis added]). We recognized that, in such a situation, breaking into one of the commercial spaces may create virtually no risk that the apartment residents would even be conscious of the burglar’s presence, such that the purposes of the statute would not be served and its application would be unfair (see id.).
The actual building at issue in McCray was a large, modern Manhattan building containing numerous businesses, including Madame Tussaud’s Wax Museum and a Hilton Hotel. Because the hotel constituted a dwelling, we concluded that the defendant could be guilty of two counts of burglarizing a dwelling where he broke into a locker room for hotel employees, and into the museum. We reasoned that, even though these areas were several floors away from guest rooms where people slept, an internal stairwell provided access between the floors on which the guest rooms, the locker room, and the museum were located (see id. at 630). Significantly, to reach the locker room, the burglar had entered the stairwell by passing through the 16th floor, which was adjacent to the 17th floor where guest rooms were located. We had “little hesitation in concluding that the risks inherent in burglary of a dwelling—the ‘night terror’ and the danger of violence that we spoke of in Quinn— are present when a burglar comes this near to rooms in which people are sleeping” (id.). Although it was a closer call on the burglary of the museum, which was much farther from the guest rooms, we found that it constituted burglary of a dwelling because the burglar likely gained access through the aforementioned stairwell (see id.). Though the floors of the museum that the defendant entered were not physically close to the hotel’s guest rooms, we noted that proximity and ease of access were “at least equally important” factors (id.). Thus, this Court clearly stated that, for the exception to apply, the burglarized portion of the building must be both remote and inaccessible to the sleeping quarters (see id. at 624, 630).
Despite use of the word “large” in both Quinn and McCray to describe buildings subject to the exception, I agree with the majority that a building’s size, per se, is not dispositive but, instead, constitutes a factor to consider when determining whether the residential portion of the building is so remote and inaccessible as to eliminate the dangers inherent in burglaries of dwellings. However, I cannot agree with the majority’s conclusion that applying the general rule is unwar *1011 ranted here, such that the exception applies and the basement cannot be considered a dwelling under Quinn and McCray.
In my view, the majority errs in overlooking the fact that what our cases call “the general rule” is based on a literal reading of the statute itself. As a result, the majority too broadly applies an exception that this Court created; such an exception should be narrowly applied because it circumvents the plain language used by the legislature (see e.g. Matter of Gomez v Stout, 13 NY3d 182, 187 [2009]; Solow Mgt. Corp. v Tanger, 10 NY3d 326, 330-331 [2008]). Although the exception to the statutory language was judicially created many years ago, this Court has only addressed it twice (including the case in which it was created). Both times, we found that it was inapplicable. Until today, neither this Court nor any other appellate court in this state has ever found that' the exception to the statute applied to the facts of any particular case presented to it.
As noted, McCray made clear that the exception requires the burglarized portion of the building to be both “remote and inaccessible” to the residential portion (McCray, 23 NY3d at 624 [emphasis added]). Indeed, we stated that proximity and ease of access were each important factors (see id. at 630). In McCray, we did not apply the exception because, although the sleeping quarters were fairly remote from the museum, they were accessible by a common stairwell (see id.). We did not apply the exception in Quinn because, although the living quarters were inaccessible due to the lack of an internal connection, they were one floor above the burglarized shop, rendering them not remote (see Quinn, 71 NY at 565). Hence, in each case in which we have considered the exception, we declined to apply it where only one of the two criteria was present.
Here, it is undisputed that the apartments are not directly accessible from the basement. The point of contention is the remoteness factor. The criteria of remoteness addresses distance or proximity {see Black’s Law Dictionary 1487 [10th ed 2014], remote [“(f)ar removed or separated in time, space, or relation”]). The majority concludes that the basement was remote because the residents do not use it and have no “relationship” to that area (majority mem at 1007). That conclusion conflates remoteness with inaccessibility and fails to separately consider the remoteness or proximity of the two portions of the building, as required by our precedent. It also relies on the use to which the nonresidential area is put, which is not a factor in itself and is distinct from the question of remoteness.
*1012 Though lacking accessibility, the basement is not remote from the apartments. The basement is a mere two stories below the nearest apartment. In each of our prior cases, we found that a distance of one story was not remote (see McCray, 23 NY3d at 630; Quinn, 71 NY at 565-566, 573). We have never held that direct contiguity is required to preclude remoteness, and I cannot conclude that one additional story tips the balance. Moreover, the entrance doors to the basement are on the street level, just one story below the nearest apartment. A tenant in a second-floor apartment could easily experience “night terror” if he or she became aware that someone was breaking into or burglarizing the basement just a short distance below. That situation is similar to our example in McCray of a hotel guest hearing a burglar in a coffee shop across the hall (see McCray, 23 NY3d at 627). Likewise, if the occupant of a second-floor apartment was the owner of the deli here—similar to the example in McCray of a shop owner/tenant—that person might be likely to confront the burglar to protect his or her property, creating the possibility of violence and danger to human life which the statute was designed to deter (see id. at 627; see also Barney, 99 NY2d at 370; Quinn, 71 NY at 567, 572).
The majority is not only applying the exception for the first time, but it is doing so in a factual situation that—despite the majority’s claim that its holding is limited to the “narrow circumstances of this case” (majority mem at 1006)—invites the broad application of the exception to numerous ordinary buildings, that is, buildings with a commercial space on the ground floor, storage in a basement beneath the business, and residential units in the upper stories. The building here consists of eight stories (including the basement), of which six contain apartments. That means that approximately 75% of the building is residential. This is a far cry from the example we imagined in McCray, which consisted of a mainly commercial skyscraper containing a few apartments a great distance from the building’s stores and offices (see McCray, 23 NY3d at 627).
Application of the general rule here is consistent with the purpose of the statute, and the majority’s holding constitutes an unreasonable expansion of the exception to that rule. Rather than limiting the exception to cases in which “applying the four walls and a roof rule would stretch the statute beyond its purpose” (id. at 628), the majority’s application of the judicially-created exception here has stretched the exception beyond its *1013 limits, causing it to swallow the general rule as set forth by the legislature in the statute. Because the basement in this primarily-residential building was not so remote from the living quarters as to eliminate the special dangers inherent in the burglary of a dwelling, I would affirm defendant’s conviction of burglary in the second degree.
Chief Judge DiFiore and Judges Pigott, Rivera, Abdus-Salaam, Fahey and Garcia concur; Judge Stein dissents and votes to affirm, in an opinion.
Order modified by vacating the conviction on the count of burglary, in the second degree, dismissing that count in the indictment, and remitting to Supreme Court, New York County, for resentencing, and, as so modified, affirmed, in a memorandum.

 Defendant also argues that the People failed to prove his intent to commit a crime in the basement, but that argument is unpersuasive (see People v Samuels, 99 NY2d 20, 24 [2002]; People v Cabey, 85 NY2d 417, 421-422 [1995]).